Brockenbrough, J.
It sufficiently appears, that the debt originated in a gaming transaction, as between the parties to it; but the question in the court of chancery was, whether the proof was sufficient to affect Tankersley; and although his administrator is not a party to this appeal, it seems necessary for us to go into thé same inquiry. I am of opinion, that, as between Madison and Tankersley, there is no sufficient proof, that the order drawn by Dade on Madison, and Madison’s acceptance thereof, were founded *403 on a gaming consideration, unless Dade’s answer can be regarded as evidence on that, point against Tankersley. And I think that Dade’s answer is not evidence against Tan-her sley. The declarations of Dade, in his answer, are not more binding on Tankersley, than if they had been made out of court. The title of Tankersley to the money, it is true, was derived from Dade, and any declarations of the latter as to the origin of the debt, made before the title passed from him to Tankersley, by drawing the order and the acceptance thereof, might have been admissible, but declarations made after the title so passed, were inadmissible. Givens v. Mann, 6 Munf. 191.
Excluding Dade’s answer, as evidence against Tankersley, there was no sufficient evidence as against him to prove that the order which he held, and which was accept,ed by Madison, was founded on a gaming consideration. If that had been proved, I should have thought it a matter of no consequence, whether Tankersley had been informed or not, that it was given for gaming; for the statute renders void all gaming contracts whatsoever, whether they assume the shape of bonds, bills, notes, or any other instrument. Nor was there any pretence, on the part of Tankersley, that he had been induced to take the order, by any new promise or assurance by Madison, that the debt should be paid, as in the cases of Buckner v. Smith, 1 Wash. 296. and Hoomes v. Smock, Id. 389.
Taking the case as it stood on the proofs, I am of opinion, that the chancellor was right in dissolving the injunction, and dismissing the bill as to Tankersley. But how stands it as to Dade 1 If Madison had paid the gaming debt voluntarily, he probably could not have sued to recover back the money, except on the terms and within the time prescribed by the 3rd section of the statute against gaming, 1 Rev. Code, ch. 147. p. 562. But he did not pay voluntarily; he resisted the payment as far as he could. He had been sued at law, and judgment recovered against him ; and he applied to the court of equity, not to recover back money which he had paid, but to relieve him from paying the money. The *404 3rd section of the statute does not, I apprehend, apply to a case of this kind.
Dade has acknowledged the gaming, and as he has received valuable consideration from Tankersley for the acceptance of Madison, which the latter had been compelled to discharge in full, it is but equitable, that Madison should recover back from Dade, that which the latter acknowledges he had no legal right to extract from him, either directly or indirectly. The decree should be affirmed.
Cabell, J. concurred.
Tucker, P.
There can be no question, that the appellee had a right to come into a court of equity to injoin the judgment obtained at law, on the ground that the draft for which he was sued was .accepted for a gambling consideration. Whether he defended himself at law or not, the court of equity will interfere on the ground of the vicious consideration. Hoomes v. Smock, 1 Wash. 391. Skipwith v. Strother, 3 Rand. 214. To the bill praying an injunction, the drawer of the order was properly made a party, on the familiar principle, that all concerned in interest should be parties, both that they may defend themselves, and that the burden may be placed on the right shoulders.
But though Madison had a right to his injunction, on the ground of the vicious consideration of the draft, it behoved him to prove his case; which he has not done. It was not enough to prove, that Dade and Madison had gambled; but it must be shewn, that the draft was given and accepted upon a gambling consideration. Now, it was by no means proved that Madison and Dade had ever gambled together before the date of this draft. It is true, Dade in his answer, acknowledged the gaming consideration, explicitly. But is this evidence against Tankersley ? I think not. No rule is better settled than that the answer of one defendant cannot be read against another. In Skipwith v. Strother, the, question is waived as to the effect of the assignor’s answer acknowledging the gaming consideration *405 upon the interest of the assignee. In Lewis v. Long, 3 Munf. 136. one judge was of opinion, that the confessions or declarations of the assignor after the assignment made, were not evidence; and this seems consistent with the rule which admits the confessions of a party, made when he is interested, to he evidence, but does not admit his confessions made after he has parted with his interest. Burton v. Scott, 3 Rand. 399. 408. Pocock v. Billing, 2 Bing. 269. 9 Eng. C. L. R. 409. Indeed, even this rule seems to confine the admissibility of the confession, to the case of the party being dead at the time of trial, or to the case of a party identified in interest. In Barough v. White, 4 Barn. & Cres. 329. 10 Eng. C. L. R. 345. the confessions of a payee of a note, made while it was in his possession, that he gave no value for the note, were held inadmissible against his indorsee, as it appeared he was alive, and might have been examined. So too, in Shelton v. Cocke &c. 3 Munf. 191. the acknowledgment by a partner after the dissolution of a copartnership, was held not proper evidence of the existence' of the debt, so as to charge the other partners. So too, in Givens v. Mann, 6 Munf. 191. confessions after the party had parted with his interest, were rejected.
It is true, there are cases, in which the answer of one party is evidence against those claiming under him ; as in Field v. Holland, 6 Cranch 8. And so too, I presume, where there is a community of interests; 1 Phil, on Ev. 72. [75];* or where a fraud and combination is proved between two persons, the confessions of one are evidence against the other: Claytor v. Anthony, 6 Rand. 285. Perham v. Raynal, 2 Bing. 306. 9 Eng. C. L. R. 413. 414. But where there is no connection or community of interest, it would be a violation of the best received rules, to permit a party who has parted with his interest,, t,o bind him to whom he has transferred it,, either by his confessions or by his answer. His assignee has a right to a cross-examination. Thus, in this case, Dade, in his answer, disavows liability. He Bays Tanker sley took the draft on his own risque, and *406 with a knowledge of the gaming consideration, and he distinctly admits the corrupt consideration as being the foundation of the draft. If he tells truth, he was disinterested; and if so, he ought to have been examined as a witness. His ansioer cannot be used against Tankersley.
The gaming consideration, then, not being proved so as to affect Tankersley, the injunction was properly dissolved; and as every thing stands fair so far as he is concerned, he was entitled to recover the full amount of the draft from Madison, whatever sum he may have given for it.
Then, as to Dade: two questions are made, 1. Whether there should have been any decree against him ? and 2. To what amount?
As to the first, it was contended, that the bill was not under the 3rd section of the statute against gaming, the money not having been paid; and that a bill in equity will not lie, because the party is not bound to answer such a bill, since the discovery might subject him to a penalty. If this should be admitted, still it would only prove, that the defendant might have demurred to the bill for that cause; but no case has been produced, which shews that if he answers and confesses the vicious consideration, equity will not decree that he shall refund. Indeed, if he had demurred to the discovery, that would not have defeated the whole bill, since it prays relief, provided the facts could be sustained aliunde. 1 Madd. Ch. Prac. 175. It was also contended, that as the money had not been paid, there was no ground for the decree. I do not think there is any thing in this objection. The parties are before the court: the court decrees, that Madison shall pay Tankersley, and that when he has done so, and filed the evidence of payment, he shall be entitled to proceed for his indemnity, by execution against Dade. This is a very familiar proceeding in equity, whose principle it is, when all the parties are before it, to terminate the controversy, to put the burden on the right shoulders, and to put an end to farther litigation. 1 think the proceeding entirely without objection ; for, if Madison had sued out execution against Dade, before he had strictly complied with the or- ■ *407 der, in procuring a discharge from Tankersley’s executor, it might have been quashed, on the motion of Dade’s administrator, for irregularity. It is true, there was no decree over in Hoomes v. Smock, and Buckner v. Smith; but it might not have been asked; and moreover, this proceeding of decreeing over against the parties ultimately responsible, was not, at that day, as familiar in the courts, as it now is. Upon the whole, 1 think Dade was properly decreed against, as he confessed the gaming consideration.
As to the second point, it is obvious, that if Dade is decreed against, the proper decree is for the whole sum decreed against Madison. There is no other sum for which the decree could be rendered. Madison has paid the whole amount of the judgment on the draft, with interest, for so much money won at gaming. This is the sum he had a right to recover back. If Dade desired to confine Tankersley to the amount he paid for the draft, he ought to have established the fact (of which he was conusant), that Tankersley knew of the gaming consideration, when he bought, and gave, on that account, less for the draft than its nominal amount. This would have perpetuated the injunction. Tankersley would then have sued him, and could only have recovered back what he had paid. Whether he can now recover the difference from Tankersley, I cannot say, nor have I any opinion. But I am very clear that the decree was right and ought to be affirmed.
Decree affirmed.

 New York edi. of 1820.