## FIELD AND OTHERS v. HOLLAND AND OTHERS.

---

*The report of auditors, appointed by consent of parties in a suit in equity, is not in the nature of an award by arbitrators, but may be set aside by the court, although neither fraud, corruption, partiality, or gross misconduct, on the part of the auditors, be proved.*

*Without expressly revoking an order of reference to auditors, the*

ERROR to the circuit court for the district of Georgia, in a chancery suit, in which Field, Hunt, Taylor and Robeson, were complainants, and Holland, Melton, Tigner, Smith, Cox and Dougherty, were defendants.

The decree of the court below dismissed the bill as to all the defendants.

The bill stated that, on the 21st of July, 1787, *Micajah Williamson* obtained from the state of Georgia a grant of 12,500 acres in Franklin county, in that state. On the 9th of July, 1788, Williamson conveyed to *Sweepson*, who, on the 23d of July, 1792, conveyed to *Cox*, who, on the 3d of September, 1794, conveyed to *Naylor*, who, on the 18th of December, 1794, conveyed to the complainant Field, and one

Harland, as tenants in common, and that Harland afterwards conveyed his undivided interest to the other complainants.

That the defendants, Melton, Tigner and Smith, claim title to the land in virtue of a sale made by the sheriff to the defendant Melton, upon two writs of *fieri facias*, founded upon judgments obtained by the defendant *Holland* against the defendant *Cox*; one in the year 1793, for 1,556*l.* the other in 1794, for 3,000*l.* which executions were levied, and sales made thereon in 1799. That the complainants were ignorant of those judgments at the time of their purchase. That the judgments, or the greater part thereof, were paid and discharged by Cox before the executions issued thereon; but the sheriff, well knowing the same, proceeded to levy and sell, &c.

That John Gibbons, the complainants' agent, exhibited to the sheriff an affidavit stating that the executions had issued illegally, on which it became the duty of the sheriff to return the same into court, and discontinue ministerial proceedings thereon until the judgment of the court whence the executions issued was first had and obtained in the premises, according to the provisions of the act in such case made and provided. The affidavit of Gibbon stated, that the executions were illegal because they had not been credited with a partial payment made by Cox.

The bill states that the sheriff's sale was fraudulently made with a view to get the land at a very low price; the sale being for 300 dollars; and the land worth 25,000. That the purchaser, *Melton,* at the time of his purchase, knew of the complainants' title, and indemnified the sheriff for proceeding in the sale, and agreed that he should participate in its benefits.

MELTON's *answer* states, that in the year 1787, having land warrants, he surveyed three tracts of 920 acres each, on what he then supposed was vacant land, but which appears now to be within William-

FIELD
*v.*
HOLLAND.

court may direct an issue to be tried.

A court of equity may ascertain the facts themselves, if the evidence enables them to do it, or may refer the question to a jury, or to auditors. After an issue ordered, a court of equity may proceed to a final decree, without trying the issue, or setting aside the order.

The answer of a defendant is evidence against the plaintiff, although it be doubtful whether a decree can be made against such defendant.

The answer of one defendant is evidence against other defendants claiming thro' him. The plaintiffs cannot avail themselves of the answer of a defendant, who is substantially a plaintiff; it is not evidence against a co-defendant. If neither the debtor, nor the creditor, has

FIELD
v
HOLLAND.

*made the ap-
plication of
the payments,
the court will
apply them to
the debts for
which the se-
curity is most
precarious.*

son's elder grant, of which he had no intimation till the year 1797, when he had sold parts of his surveys. Finding that Naylor had Williamson's title, and being desirous of protecting the titles of so much of the land as he had sold, he purchased of Naylor 4,505 acres. That with the same view, he afterwards purchased a judgment against Naylor, which he discovered was prior to Naylor's deed to him; upon this judgment, he caused an execution to be issued, and levied upon the land which he bought in at a fair sale, under the execution, for 300 dollars. That afterwards, finding that the land had been sold for taxes, and purchased by George Taylor, he purchased Taylor's claim, and paid him 300 dollars for it. That in June, 1799, he first heard of the claim of the complainants, and made a verbal agreement with Gibbons, their agent, for the purchase thereof, at a dollar an acre; but finding Holland had a prior judgment against Cox which bound the land, and which he was about to enforce by an execution and sale of the land, and Gibbons having failed to compromise with Holland, or otherwise to stop the sale, he (Melton) agreed with Holland that he (Melton) should become the purchaser at the sale, and would pay Holland 1,500 dollars for the land without regard to the sum at which it might be struck off to him, which sum he has paid. That this was done without any fraudulent intention, and to secure his title; being fully satisfied that the lands were liable to the judgments.

The answer of Dougherty, the sheriff, denies all fraud, combination, and interest in the transaction, and avers, that he acted merely in the discharge of his official duty; and that the sale was fair and *bona fide*.

Smith's answer is immaterial, as it relates only to 75 acres of the land which he claimed under a title prior to the complainants.

Tigner answers merely as to 357 acres which he purchased of the defendant Melton, in the year 1797.

Holland's answer states, that subsequent to the two judgments, he made large advances to Cox in goods, and took his obligations.

It states sundry payments and negotiations made by Cox, particularly three drafts, or inland bills of exchange, given by Cox to Holland in February, 1795, and payable in May, June, and July following, for which Holland gave the following receipt: " Washington, 21st February, 1795. Received from Zachariah Cox, Esq. three sets of bills of exchange, dated the 5th and 15th instant, for twenty thousand dollars, payable in Philadelphia, which when paid will be *on account of my demand against said Cox.*"

That in September, 1796, a settlement took place between Cox and Holland, of all their transactions *distinct from, and independent of, the two judgments,* and Holland took Cox's note for 18,000 dollars for the balance, and gave a receipt, *with a stay of execution upon the two judgments* for three years.

That the judgments " *never were dormant, but have been regularly kept alive and remain unsatisfied.*"

That it was an established rule between Cox and Holland, that all payments made were to go to the discharge of running and liquidated accounts, independent of the judgments, and that mode of settlement was adopted on their last settlement in 1796.

The *answer of Cox* states, positively, that *the judgments were paid and satisfied,* as early as the 14th of September, 1796, by settlement of that date, when the parties passed receipts in full of all past transactions.

That the three bills of exchange, amounting to 20,000 dollars, were by him delivered to Holland *on account of the two judgments,* and that the bills have been *duly* paid and discharged.

That the settlement of the 14th of September, 1796, was a final settlement of all accounts prior to that day, including judgments, bonds, notes, and

all demands whatever up to that time; and *particularly* the judgments in question. That they exchanged receipts in full, ("which receipt the defendant has lost or mislaid.") That, upon the settlement being made, Holland promised and verbally engaged to enter up satisfaction upon the said judgments.

The *evidence* on the subject of the payment of the judgments consisted principally of Mr. Vaughan's deposition, and the letters and receipt of Holland for the bills for 20,000 dollars.

Mr. Vaughan stated, that although he had no particular knowledge how Holland and Cox settled, yet when a new advance was made by Holland to Cox, after the 14th of September, 1796, he understood the *old concern* was settled. In a letter from Holland to Vaughan of the 18th of April, 1795, enclosing the bills for 20,000 dollars, he says, "you will oblige me much by procuring the payment of these bills. I have delayed the execution and sale of Mr. Cox's property to the great injury of my own affairs, and I request you may assure him that should the bills not be paid immediately, the consequence must be an assignment of the judgment against him, the result of which will be an immediate sale of his property, which I will not be able to prevent, unless his punctuality in this instance steps forward." "The late stoppage of Mr. Morris and Nicholson, I am fearful may affect them, but as they, together with Mr. Greenleaf, are concerned with Mr. Cox, in the valuable property which my execution is upon, I expect they will *for their own sakes* see me satisfied, and *these drafts paid,* to *prevent worse consequences.*" He afterwards says, "I have not security by judgment to the *extent* of my debt against him." He also urges Mr. Vaughan to obtain security from Cox in case the bills should not be paid. In a letter of May 29, 1795, Holland again says, "I hope you will be able to make some arrangement for the payment of the 18,000 dollars, *as I feel a reluctance in pushing the execution* I have against the property of

Mr. Cox, although by doing so I would make *some thousands.*"

It appeared from Mr. Vaughan's account with Cox, as stated in his deposition, that the bills for 20,000 dollars, and also a draft on I. Nicholson for 2,570 dollars, and 10 *per cent.* damages on the 20,000 dollars, excepting a balance of about 1,500 dollars, had been paid before the 6th of February, 1796; and Mr. Vaughan had given up to Cox his drafts of 18,000 dollars, and 1,000, and 3,000 dollars, all of which had been given to Holland on account of prior claims. On the 23d of December, 1803, it was agreed by the parties to this suit, that *W. W., I. W., and J. C.,* or any two of them be appointed *auditors,* with power to *examine* all papers and documents relative to payments made by Zachariah Cox, in satisfaction of judgments obtained by Holland against him, and charged in the bill to be satisfied.

On the 21st of April, 1804, the auditors reported that they were of opinion, from the papers laid before them by both parties, that the judgments had been satisfied by payments made prior to February, 1796.

Upon exceptions being taken to this report, it was set aside on the 14th of May, 1804, and *G. A., I. P. W., and E. S.* were appointed auditors by the court, to report whether the judgments were really satisfied; and that they report a statement of the payments made on the judgments.

On the 7th of December, 1804, those auditors reported that they were of opinion that *no payments* appear to have been made on the judgments, no *vouchers* having been produced to that effect.

To this report exceptions were filed on the 14th of December, 1804. It does not appear upon the record that any order was taken either respecting the report or the exceptions to it.

FIELD
v
HOLLAND.

On the 17th of May, 1805, the court decreed, that the bill should be dismissed with costs as to *Melton, Dougherty, Smith* and *Tigner*; and that Holland should bring an action of debt upon the judgments against Cox, who was to appear by attorney and plead payment, upon the trial of which issue, the bill, answers, exhibits, and testimony in this cause was to be considered as evidence.

No other notice is taken of the order for an issue at law, and on the 15th of May, 1807, the court passed the following decree.

" This cause is involved in much obscurity, but, upon mature deliberation, we are of opinion that there is sufficient ground for us to decree upon. The defendant Holland is in possession of a judgment against Cox, which the latter contends is satisfied, and one of the objects of this bill is to have satisfaction entered of record upon the said judgment. The only difficulty arises upon the application of sundry payments which the complainants contend extinguished the judgment, but which the defendant Holland replies were applicable to other demands. The principle on which the court has determined to decree is this; that all payments shall be applied to debts existing when they were made, and as it appears that there were sundry demands of Holland's on Cox which were not secured by judgment, that those sums shall be first extinguished, and the balance only applied to the judgments.

" This application of those payments is supported by general principles, as well as the particular circumstances of the case.

" 1. The payer had a right at the time of payment to have applied it to which debt he pleased where a number existed, but if he neglects to do so, generally, it rests in the option of the receiver to make the application. In this case Cox takes his receipts *generally*. Even when the large payment

of 20,000 dollars was made, he takes a receipt on account.

" 2. It appears that the application of those payments has actually been made in the manner we adjudge; for from a letter of Mr. Vaughan, through whom most of the payments were made, he intimates that he had given up the evidences of several debts to Cox, because they had been satisfied. Such an act could only have been sanctioned by a knowledge on his part that the money paid through him was in part applicable to those debts.

" The sums which we adjudge to have been due to Holland are the following, viz.

|  | l. | s. | d. |
|---|---|---|---|
| Amount of first judgment, | 1,556 | 0 | 0 |
| Interest from 1st of May, 1793, |  |  |  |
| Amount of second judgment, | 3,000 | 0 | 0 |
| Interest from 21st of June, 1793, |  |  |  |
| Amount of acknowledged account, | 332 | 10 | 7 |
| Interest from 11th February, 1794, |  |  |  |
| Note of March 1, 1794, int. Feb. 1, 1794, | 2,278 | 0 | 0 |
| Note due 1st May, 1794, | 1,500 | 0 | 0 |
| Interest from 1st May, 1794. |  |  |  |

" The payments made by Cox are the following:

|  | l. | s. | d. |
|---|---|---|---|
| 1794, May 25th, amount paid, | 11 | 13 | 4 |
| June 25th, amount paid, | 1,563 | 17 | 10 |
| 1795, Feb. 21, amount of bills $20,000, | 4,666 | 18 | 4 |
| 26, amount paid, | 28 | 0 | 0 |
| Bills on Greenleaf, | 700 | 0 | 0 |
| Bills on Cox himself, | 11 | 13 | 4 |

" Upon the foregoing data, the register will state the account between the parties, calculating interest upon the whole amount bearing interest to the time of payment, and applying the payments according to their dates."

The register having, upon these principles, stated

an account, by which a balance of 11,086 dollars remained still due on the judgments, the court, by a final decree, dismissed the bill; and the complainants sued out their writ of error.

*Jones* and *Harper*, for the plaintiffs in error, contended;

1. That the court below erred in setting aside the report of the auditors who had been appointed by consent. Their report was like an *award*, which cannot be set aside but for fraud, or partiality, or gross mistake.

2. In not having decided upon the exceptions taken to the second report of the auditors.

3. In not enforcing or setting aside the order to try an issue.

4. In dismissing the bill as to the purchasers, and retaining it as to Holland. The purchasers had notice of the payment of the judgments. The plaintiffs, at the time of the sale, could not be presumed to have known the full extent of the payments made. It was sufficient that the purchasers had notice of the complainants' claim, and that the validity of the sale would be disputed.

The 20,000 dollars, in bills, ought to be applied to the judgments, because that is most beneficial to the payer, as no other debt was then bearing interest. The receipt is upon account of Holland's *demand;* evidently alluding to the single demand on the judgments. If it had been intended as a general payment, it would have been on account of his *demands,* in the plural.

The object of the bill is to set aside the sheriff's sale to Melton. He is the only real defendant. Holland is only incidentally interested. It would have been no cause of demurrer if he had not been made a party. Nor is Cox a necessary party,

It is true that the answer of one defendant cannot be taken as evidence against another. If one defendant wishes to avail himself of the testimony of another, he must take out a commission and examine him as a witness. Holland's answer is no more evidence in favour of Melton, than Cox's answer is evidence against him. Holland's answer is only evidence for *himself*, and no decree is sought against *him*. If, then, the answers of Cox and Holland are both excluded, the only evidence is Vaughan's deposition, and Melton's answer. If Holland's and Cox's answer be both admitted, the result will be the same, for one destroys the other. Cox is not discredited by Vaughan's deposition. The only facts proved are the two judgments and the payment of 20,000 dollars.

If money be paid *on account*, it is to be applied, in equity, most beneficially for the debtor. It is not now in the power of the creditor to apply it to which demand he pleases. If neither party, at the time of payment, made the application, it is the province of the court of equity to make it now. The court is to judge, from all the circumstances of the case, what was the intention of the parties, and what application of the money would be most beneficial to the debtor.

Vaughan considered it as a settlement of all accounts.

Notice that the judgment was satisfied was not necessary; the purchaser was bound to take notice—*caveat emptor*. But if notice was necessary, enough was given to put the purchaser upon inquiry.

MARSHALL, Ch. J. Can the sheriff, in Georgia, sell the whole of a large tract for a small debt? or must he confine himself to the sale of enough to pay the debt.

JOHNSON, J. The sheriff cannot divide a tract

FIELD
v.
HOLLAND.

of land. If there are several tracts of land, he may sell that which comes nearest to the sum.

*Harper.* An objection has been made to the copy of the deed from Williamson to Sweepson, that it does not appear that the original deed was recorded in due time.

But this objection comes too late in the appellate court. Not having been made in the court below, it must be considered as having been waived.

The first report of the auditors was pursuant to their authority, and can only be impeached for corruption, or gross impropriety of conduct, or mistake appearing upon the record.

*F. S. Key* and *C. Lee*, contra.

The report made by auditors, under an order made by consent, may be set aside as well as a report made by auditors under a reference made by the simple order of the court.

This report was excepted to because the auditors report only their *opinion* generally, that the judgments were satisfied, and do not report the payments in particular which had been made upon them.

LIVINGSTON, J. It does not appear what was done with those exceptions.

*Key.* It is to be presumed that they were properly disposed of. The cause was afterwards fully heard.

The second report states, that no payments appear to have been made upon the judgments. The exceptions to this report were abandoned.

As to the issue ordered to be tried, it was a mere interlocutory order, which the court was not bound to pursue; but might, if they thought proper, pro

ceed to a final hearing without trying the issue, or setting it aside formally.

No notice that the judgments were satisfied, is averred or proved. The payments were not made upon the judgments, and have been properly applied to other accounts.

If Cox did not at the time direct to which account the payments should be applied, Holland might apply them to which account he pleased. If neither party has applied them, the court will apply them to claims not secured by judgments.

Every debt due to Holland from Cox made but one demand. The notes due to Holland were payable in May; the bills for 20,000 dollars did not become due till after May, although drawn in February. If the bills were given on account of the judgments, there would have been a stay of execution until the bills became payable. When arrested in Philadelphia, Cox did not allege that the judgments had been satisfied; nor is it averred in his answer.

No good title is shown from Williamson. The original deed is not produced, and it does not appear from the copy whether the original was recorded in due time.

The first auditors exceeded their authority; they were only authorized to do a ministerial act, but they assumed to act *judicially*.

The report of the second auditors was correct; they were competent to say that no payments had been made upon the judgments. Cox's answer is no evidence against Holland. If the complainants wished to avail themselves of Cox's testimony, they ought to have taken out a commission and examined him.

But Holland's answer is evidence for him and

FIELD
v.
HOLLAND.

those claiming under him, and is conclusive unless contradicted by two witnesses.

Cox's answer is discredited in a material point, viz. the payment of the judgments.

This court decided in the case of the *Mayor &' Commonalty of Alexandria* v. *Patton &' others,* (ante, v. 5. p. 1.) that if the debtor do not, at the time of payment, direct to which account it shall be applied, the creditor may *at any time* afterwards apply it to which account he pleases. In equity, all debts bear interest.

### *February* 12.

MARSHALL, Ch. J. delivered the opinion of the court as follows:

In this case some objections have been made to the regularity of the proceedings in the circuit court, which will be considered before the merits of the controversy are discussed.

In May term, 1803, the following order was made.

"By consent of parties, it is agreed, that William Wallace, James Wallace and John Cumming, or any two of them, be appointed auditors, who shall have power to examine all papers and documents relative to payments made by Zachariah Cox, in satisfaction of judgments obtained by said Holland against said Zachariah, and charged in said bill to be satisfied, and that the testimony of John Vaughan, taken by complainants before Judge Peters, and now in the clerk's office, may be produced by them to said auditors. And it is further agreed, that said auditors may meet at any time after the first day of April next, and not before, on ten days' notice given to the adverse party."

The auditors returned the following report.

" We are of opinion, from the papers laid before

us, by both' parties, that the judgments in the above case have been satisfied by payments made prior to February, 1796."

FIELD
v.
HOLLAND.

On exceptions this report was set aside.

By the plaintiffs in error it is contended, that the order under which the auditors proceeded was equivalent to a reference of the cause by consent, and that their report is to be considered as an award obligatory on all the parties, unless set aside for some of those causes which are admitted to vitiate an award. But this court is unanimously of opinion, that the view taken of this point by the plaintiffs is incorrect. The order in question bears no resemblance to a rule of court referring a cause to arbiters. It is a reference to " auditors," a term which designates agents or officers of the court, who examine and digest accounts for the decision of the court. They do not decree, but prepare materials on which a decree may be made. The order in this case, so far from implying that the decision of the auditors shall be made the decree of the court, does not even require, in terms, that the auditors shall form any opinion whatever. They are merely directed to examine all papers and documents relative to payments made in satisfaction of the judgments.

From the nature of their duty they were bound to report to the court, and to state the result of their examination, but this report was open to exception, and liable to be set aside. In the actual case the report was a very unsatisfactory one, and was, on that account, as well as on account of the objections to its accuracy, very properly set aside.

The cause was again referred to auditors, who reported that no evidence had been offered to them of payments to be credited on the judgments alleged by the plaintiffs to have been discharged.

The defendants insist that this report ought to

have terminated the cause. But the court can perceive no reason for this opinion. If there were exhibits in the cause which proved that payments had been made, the plaintiffs ought not to be deprived of the benefit of those payments, because the auditors had not noticed the vouchers which established the fact.

The court, without making any order relative to this report, directed an issue for the purpose of ascertaining, by the verdict of a jury, the credits to which the plaintiffs were entitled.

It was completely in the discretion of the court to ascertain this fact themselves, if the testimony enabled them to ascertain it; or, if it did not, to refer the question either to a jury, or to auditors. There was, consequently, no error, either in directing this issue, or in discharging it.

But, without trying the issue, or setting aside the order, the court has made an interlocutory decree, deciding the merits of the case by specifying both the debits and credits which might be introduced into the account, and directing their clerk to state an account in conformity with that specification:

This interlocutory decree is undoubtedly an implied discharge of the order directing an issue, and is substantially equivalent to such discharge. Had the issue been set aside, in terms, in the body of the decree, or by a previous order, it would have been more formal, but the situation of the case and of the parties would have been essentially the same. The only real objection to the proceeding is, that the parties might not have been prepared to try the cause in court, in consequence of their expectation that it would be carried before a jury. There is, however, no reason to believe that this could have been the fact. Had there been any objection to a hearing on this ground, it would certainly have been attended to, and, if overruled, would have been respected by this court. But no objection appears to have been made, and

the inference is, that the cause was believed to be ready for a trial.

These preliminary questions being disposed of, the court is brought to the merits of the case.

The plaintiffs claim title to a tract of land in the state of Georgia, under several mesne conveyances from Micajah Williamson, the original patentee. In the year 1793, while these lands were the property of Zachariah Cox, one of the defendants, two judgments were rendered against him in favour of John Holland, also a defendant, for the sum of 4,556*l.* sterling. These judgments remained in force until the year 1799, when executions were issued on them, which were levied on the lands of the plaintiffs held under conveyances from Cox, made subsequent to the rendition, of the judgments. John Gibbons, the agent of the plaintiffs, objected to the sale, because the judgments were satisfied either, in whole or in part, but as he failed to take the steps prescribed in such case by the laws of Georgia, the sheriff proceeded, and the lands were sold to Melton and others, who are also defendants in the cause.

This bill is brought to set aside the sale and conveyance made by the sheriff; and it also contains a prayer for general relief.

As the judgments constituted a legal lien on the lands in question, and the title at law passed to the purchasers by the sale and conveyance of the public officer, the plaintiffs must show an equity superior to that of the persons who hold the legal estate. That equity is, that the legal estate was acquired under judgments which were satisfied, and that sufficient notice was given to the purchasers to put them on their guard.

If the facts of the cause support this allegation, the equity of the plaintiffs must be acknowledged; but it is incumbent on them to make out their case.

FIELD
v.
HOLLAND.

In the threshold of this inquiry, it becomes necessary to meet an objection suggested by the plaintiffs relative to the testimony of the cause. It is alleged that neither Holland nor Cox are necessary or proper parties, and that their answers are both to be excluded from consideration.

The correctness of this position cannot be admitted. The whole equity of the plaintiffs depends on the state of accounts between Holland and Cox. They undertake to prove that the judgments obtained by Holland against Cox are satisfied. Surely to a suit instituted for this purpose, Holland and Cox are not only proper but necessary parties. Had they been omitted, it would be incumbent on the plaintiffs to account for the omission, by showing that it was not in their power to make them parties. Not only are they essential to a settlement of accounts between themselves, but, in a possible state of things, a decree might have been rendered against one or both of them. Neither is it to be admitted that the answer of Holland is not testimony against the plaintiffs. He is the party against whom the fact, that the judgments were discharged, is to be established, and against whom it is to operate. This fact, when established, it is true, affects the purchasers also, but it affects them consequentially, and through him. It affects them as representing him. Consequently, when the fact is established against or for him, it binds them.

The plaintiffs themselves call upon Holland for a discovery. They aver that the judgments were discharged, and expressly require him to answer this allegation. They cannot now be allowed to say that this answer is no testimony.

The situation of Cox is different. Though nominally a defendant, he is substantially a plaintiff. Their interest is his interest: their object is his object. He, as well as the plaintiffs, endeavours to show that the judgments were satisfied. He is not to be considered as really a defendant, nor does the

bill charge him with colluding to defraud the plaintiffs, or require him to answer the charge of contributing to the imposition alleged to have been practised on them. It is not in the power of the plaintiffs, in such a case, to avail themselves of the answer of a party who is, in reality, though not in form, a plaintiff.

The answer of the defendant Holland, then, where it is responsive to the bill, is evidence against the plaintiffs, although the answer of Cox is not testimony against Holland.

The evidence in the cause, then, is the answer of Holland, the deposition of Vaughan, and the various exhibits and documents of debt which are found in the record. Does this testimony support the interlocutory decree which was rendered in May term, 1805?

That decree specifies the debits and credits which are to be allowed, and directs a statement to be made showing how the account will stand, allowing the specified items.

To this order two objections may be made.

1. That it ought to have been more general. If this be overruled,

2. That its principles are incorrect.

Upon the first objection it is to be observed, that a court of chancery may, with perfect propriety, refer an account generally, and, on the return of the report, determine such questions as may be contested by the parties; or it may, in the first instance, decide any principle which the evidence in the cause may suggest, or all the principles on which the account is to be taken. The propriety of the one course or of the other depends on the nature of the case. Where items are numerous, the testimony questionable, the accounts complicated, the superior

advantage of a general reference, with a direction to state specially such matters as either party may require, or the auditors may deem necessary, will readily be perceived.

Where the account depends on particular principles which are developed in the cause, the convenience of establishing those principles before the report is taken will also be acknowledged.

The discretion of the judge will be guided by the circumstances of the case, and his decree ought not to be reversed because he has pursued the one course or the other, unless it shall appear either that injustice has been actually done, or that there is reason to apprehend it has been done.

In this case it might, perhaps, have been more satisfactory had the parties been permitted to lay all their claims and all their objections before auditors, so that the precise points of difference between them, and the testimony upon those points, might be brought in a single view before the court.

But it is to be observed that two orders of reference had before been made, on neither of which was a satisfactory report obtained. That an issue had been directed, which had, for several terms, remained untried. The probability is, that the controversy depended less on items than on principles, and that all parties were desirous of obtaining from the court a decision of those principles. That no debits nor credits were claimed but those which were stated in the papers, and that all parties wished the opinion of the court on the effect and application of those items. Under such circumstances, a judge would feel much difficulty in withholding his opinion.

In such a case the justice of the cause could be defeated only by the exclusion of some item which ought to be admitted, or by an erroneous direction with respect to those items which were introduced.

This court perceives in the record no evidence of any credit to which the defendant Cox might be entitled, which is not comprehended in the recapitulation of credits allowed him in the circuit court, and they are the more inclined to believe that no such omission was made, as the fact would certainly have been suggested by the counsel for the plaintiffs, and the circumstances under which they claimed the item disallowed by the court, would have been spread upon the record. It is true, an additional credit is claimed in the assignment of errors; but the testimony in the record does not support this claim.

The majority of the court, therefore, is of opinion, that there is no error in the interlocutory decree, unless it shall appear that the principles it establishes are incorrect.

The items claimed by Holland, and allowed by the court, are supported by documents, the obligation of which has not been disproved.

There is, then, no question on the merits but this. Were the payments properly applied by the court, or were they applicable, to the judgments?

The principle, that a debtor may control, at will, the application of his payments, is not controverted. Neither is it denied that, on his omitting to make this application, the power devolves on the creditor. If this power be exercised by neither, it becomes the duty of the court; and, in its performance, a sound discretion is to be exercised.

It is contended by the plaintiffs that if the payments have been applied by neither the creditor nor the debtor, they ought to be applied in the manner most advantageous to the debtor, because it must be presumed that such was his intention.

The correctness of this conclusion cannot be conceded. When a debtor fails to avail himself of the power which he possesses, in consequence of which

that power devolves on the creditor, it does not ap-
pear unreasonable to suppose that he is content with
the manner in which the creditor will exercise it.
If neither party avails himself of his power, in con-
sequence of which it devolves on the court, it would
seem reasonable that an equitable application should
be made. It being equitable that the whole debt
should be paid, it cannot be inequitable to extinguish
first those debts for which the security is most
precarious. That course has been pursued in the
present case.

But it is contended, that bills for 20,000 dollars
were received, and have been applied in discharge
of debts which became due two months afterwards.

If the receipt given for these bills purported to
receive them in payment, this objection would be
conclusive. If an immediate credit was to be given
for them, that credit must be given on a debt
existing at the time, unless this legal operation of
the credit should be changed by express agreement.
But the receipt for these bills does not import that
immediate credit was to be given for them. They
are to be credited when paid. The time of receiving
payment on them is the time when the credit was to be
given; and, consequently, the power of application,
which the creditor possessed, if no agreement to
the contrary existed, was then to be exercised. It
cannot be doubted that he might have credited
the sums so received to any debt actually demanda-
ble at the time of receiving such sum, unless this
power was previously abridged by the debtor.

It is contended that it was abridged; and that
this is proved by the form of the receipt. The re-
ceipt states, that the bills, when paid, are to be
credited on account of the demand of Holland
against Cox, and the plaintiffs insist that the words
import a single demand, and one existing at the
time the receipt was given.

This court is not of that opinion. The whole

debt due from one man to the other, may well constitute an aggregate sum not improperly designated by the term demand, and the receipt may very fairly be understood to speak of the demand existing when the credit should be given.

If the principles previously stated be correct, there is no evidence in the cause which er .bles this court to say that there was not due, on the judgments obtained by Holland against Cox, a sum more than equal to the value of the lands sold under execution. If so, the plaintiffs have no equity against the purchasers of those lands, whose conduct appears to have been perfectly unexceptionable; and the bill, both as to them and Holland, was properly dismissed.

It is the opinion of the majority of the court, that there is no error in the proceedings of the circuit court, and that the decree be affirmed.