## Lewis Mills *et al. versus* John C. Gore *et al.*

On a bill in equity to compel the redelivery of a deed deposited in the hands of the defendant by the plaintiff and another person, who respectively claimed a title to the same, and which the plaintiff demanded but the defendant refused to deliver up until this Court should direct him what to do therewith, it was *held*, that this Court had equity jurisdiction in the case, under Revised Stat. c. 81, § 8, and tha the plaintiff was not obliged to resort to a writ of replevin.

The answer of a defendant in a bill in equity, which is responsive to the bill, is admissible as evidence in favor of a co-defendant, more especially where such co-defendant, being the depositary of a chattel claimed by the plaintiff, defends himself under the title of the other defendant.

A grantor, upon signing a deed, put it before the grantee, saying " there is no go back from that," and the witnesses then subscribed their names ; a note, which was to be the consideration of the deed, was not handed to the grantor, but the two papers were taken up by the grantee and the parties went to a magistrate in order that he might take the acknowledgment. The acknowledgment was accordingly taken and certified, but the grantor withheld the deed from the grantee, and the grantee did not then assert or claim that it had been previously delivered, and the grantor, in his answer to a bill in equity, denied that it had been delivered. It was *held*, that a delivery had not been proved.

A party will not be allowed first to litigate a question in a court of equity and, after failing to establish his claim, again to litigate it in a court of law.

Thus, if a deed alleged by the grantor not to have been delivered, is deposited, by an agreement between the grantor and grantee, in the hands of a third person, upon the confidence that he will do nothing to prejudice the rights of either party, and upon a bill in equity by the grantee against the grantor and the depositary, to recover the deed as having been delivered, it appears by the grantor's answer and other evidence, that it never was delivered, the court will not grant partial relief by restoring the parties to the situation in which they stood before the deposit was made, leaving them to litigate in a court of law, but will decide the case definitive-ly upon the merits, as thus disclosed.

BILL in equity, brought by Lewis Mills and Charles Bradley against John C. Gore and Josiah Quincy, junior. The bill alleges, that on or about April 19, 1836, Gore offered to sell a messuage to Mills for the sum of $8,500 ; that Bradley informed Mills that he (Bradley) held a certain promissory note, made by one H. D., dated June 10, 1835, for $9,625, payable in three years from date with interest annually, to one G. H. D., and indorsed in blank by the payee, and that if Mills could negotiate the note to Gore, he might take it and therewith purchase the messuage for Bradley, at the price above named, and take Gore's promissory note for the difference between the price of the messuage and the amount

<div style="float:right">Mills
*v.*
Gore.</div>

due on the note of H. D., and that Bradley would after-wards sell the messuage to Mills, or compensate him for his agency; that Mills made a proposal to Gore accordingly, and that on or about the 27th of April, Gore called on Mills at his store in Boston, and informed him that he (Gore) had concluded to accept the offer; that on the same day Gore returned to Mills's store with a deed of the messuage, and executed and delivered the deed to Mills in the presence of Jonathan D. Wheeler, Luke Harrington, junior, and John Wheeler, junior, and that Mills then gave to Gore the note of H. D., and Gore signed and delivered his own note to Mills for $1,633·50, payable to Mills or bearer in six months with interest; that immediately after the execution and de-livery of the deed, Mills went with Gore to the office of Quincy, who was a justice of the peace, for the purpose of having the deed acknowledged by Gore; that Mills then produced the deed, which from the time of its execution and delivery had remained in his possession, and handed it to Quincy, in order that he might take Gore's acknowledg-ment and certify the same; that Gore accordingly acknowl-edged the deed, and Quincy made a certificate thereof and then placed the deed on a table or desk before him; that Gore then informed Quincy of the sale and asked him his opinion of the note of H. D., and Quincy made some dis-paraging remark concerning it; that Gore took the deed from the table and refused to restore it to Mills; that afterwards it was agreed by them to leave the deed and the two promis-sory notes with Quincy, until the next day, when they might be able to satisfy themselves of their legal rights; and that on the next day Mills demanded of Quincy the deed and Gore's note, but Quincy refused to deliver them to him. And inasmuch as the deed and note are withheld from the plaintiffs by Quincy, so that the same cannot be replevied, and the plaintiffs can have adequate remedy only in a court of equity, the plaintiffs pray that the defendants may make an-swer to all the matters alleged in the bill, and that Gore may be enjoined from selling the messuage, and that Quincy may be compelled to restore to the plaintiffs the deed and note of Gore.

Mills
v.
Gore.

On motion of the plaintiffs, Quincy was enjoined not to part with the custody of the documents in his possession until the further order of this Court.

Gore, in his answer, admits that he agreed to convey the messuage to Mills for $8,500, and receive the note of H. D. in payment, and to give his own note for the difference, relying on the representations of Mills that the note of H. D. was a first rate note and could readily be cashed at a small discount ; that he prepared a draft of a conveyance, and executed it at Mills's store ; he denies that the deed was then, or at any time, delivered by him to Mills, or that he intended to deliver it, or that he did any act or spoke any words, expressing or intended to express, any intention to deliver it, or that Mills then delivered to him the note of H. D., or that any exchange or delivery of any papers or documents was then made or intended to be made by him and Mills ; he states that after he had signed the deed. and the witnesses had subscribed it, Mills took all the papers, for the purpose of carrying them to the office of Quincy, where it had been agreed by Mills and Gore that they should go in order that the respondent might acknowledge the deed, and that the papers might be then and there delivered and exchanged ; that they proceeded to Quincy's office, and that on their arrival Mills produced all the papers ; that while Quincy was writing the certificate, Gore asked his opinion of the note of H. D., and Quincy replied that he understood H. D.'s notes had been sold at a great discount, and presumed they might be bought for very much less than their face ; that he was greatly surprised at this, and expressed his astonishment to Mills that his representations were untrue ; that he said to Quincy, " If you had not signed that certificate, I should not be bound to sell ;" that Quincy informed him that that would make no difference, and handed him the instrument ; that he (Gore) then placed the instrument before Mills on the table, and said, " There is the deed, but if you take it up I shall feel much wronged by you ;" that Mills did not take it up, but said he should not submit to imputations &c. ; that at no time at Quincy's office did Mills, in the hearing of Gore, nor at any time before the filing of this bill, claim or say that the instrument had been delivered or was

nis property, but only that Gore had agreed to deliver it ; he admits that the papers were delivered into the custody of Qᵘ incy, but says he does not recollect the terms on which Quincy was to keep them or deliver them up ; he says that he requested Quincy to deliver the deed to him, but that Quincy said he should do nothing to prejudice the rights of either party ; and he says that the representations of Mills respecting the note of H. D. were untrue, and that he believes Mills knew that they were untrue.

Quincy, in his answer, states that he does not know, of his own knowledge, what took place between Mills and Gore before they came to his office ; that he has been informed that the deed had not been delivered before they came to his office, and he believes the information to be true, inasmuch as Mills had the papers and Gore had not the note of H. D., and when Gore refused to deliver the deed, Mills did not assert or claim that it had once been delivered ; he details the transactions at his office, agreeing substantially with Gore's statement of them ; he states that at the urgent request of Mills and Gore he consented to receive the papers, and Gore handed him the deed, and Mills handed him the notes of H. D. and of Gore, and a policy of insurance on the messuage in question ; he says that Mills remarked, that he left the papers in order to give Gore time to think about the matter, and he denies that Mills or Gore deposited them for any declared or definite purpose, other than the one above stated ; he says that on the next day, April 28, 1836, Mills and Gore came to his office, and Gore required the respondent to deliver to him the deed, and Mills requested him not to do so, — whereupon the respondent told them that if they could agree as to what he should do, he would comply with their request, but if they did not agree, he would keep the papers, until the Supreme Judicial Court directed him what to do with them ; he states that he received a letter from Mills demanding the deed, and that he refused to comply with such demand, because the papers were delivered to him by Mills and Gore, upon the trust and confidence, as he understood and believes, that he should keep the same and do no act to prejudice the rights of either of those parties, and he offers

Mills
*v.*
Gore.

to bring them into Court for the benefit of such party or parties as shall appear entitled thereto ; he denies that the deed and note of Gore were withheld from Mills so that they could not be replevied, and alleges that he was always ready and willing to expose them to any process of this Court or of the Court of Common Pleas.

June 23d,
1837.

*Choate*, *W. J. Hubbard*, and *Watts*, for the plaintiffs. To the point, that the Court had equity jurisdiction of the case, they cited Revised Stat. *c.* 81, § 8 ; *St.* 1823, *c.* 140 ; *Gibbens* v. *Peeler*, 8 Pick. 254 ; that the answer of Gore could not be used as evidence in favor of Quincy, *Leeds* v. *Marine Ins. Co.* 2 Wheat. 380 ; *Reimsdyk* v. *Kane*, 1 Gallis. 630 ; *Clark's Ex'ors* v. *Van Riemsdyk*, 9 Cranch, 153 ; that there was a delivery of the deed, either at Mills's store or at Quincy's office, Co. Lit. 36 *a* and Hargr. note 223 ; *Parker* v. *Tenant*, Dyer, 192 *a* ; Viner, *Faits*, (*K*) ; Com. Dig. *Fait*, *A* 3, *A* 4 ; *M'Coy* v. *Hill*, 2 Littell, 375 ; 2 Stark. Evid. 477 ; *Townson* v. *Tickell*, 3 Barn. & Ald. 31 ; *Thompson* v. *Leach*, 1 Ventr. 201 ; *Wilt* v. *Franklin*, 1 Binney, 502 ; *Ward* v. *Lewis*, 4 Pick. 520 ; Bayley on Bills (Phillips and Sewall's 2d edit.) 37 ; *Souverbye* v. *Arden*, 1 Johns. Ch. R. 251 ; *Shelton's case*, Cro. Eliz. 7 ; and that the plaintiffs were entitled to partial relief against Quincy, so far as to be restored to the situation in which they stood before Mills and Gore went to his office, *Cooper* v. *De Tastet*, 1 Tamlyn, 177 ; *Nicholson* v. *Knowles*, 5 Madd. 47 ; *Philips* v. *Brydges*, 3 Ves. 126 ; *Selby* v. *Alston*, 3 Ves. 341 ; Bac. Abr. *Bailment*, *A* ; Jeremy on Eq. Jurisd. 469.

*C. P. Curtis* and *B. R. Curtis*, for the defendants, cited in regard to the delivery of a deed, *Powers* v. *Russell*, 13 Pick. 75 ; Com. Dig. *Fait*, *A* 4 ; *Chadwick* v. *Webber*, 3 Greenl. 146 ; *Fairbanks* v. *Metcalf*, 8 Mass. R. 230 ; *Maynard* v. *Maynard*, 10 Mass. R. 456 ; *Harrison* v. *Phillips Academy*, 12 Mass. R. 456 ; to the point, that the answer of Gore might be used as evidence by Quincy, *Woodcock* v. *Bennet*, 1 Cowen, 711 ; *Jackson* v. *Hart*, 11 Wendell, 343 ; 2 Ball & Beatty, 384, cites *Carter* v. *Colrain* ; Gresley on Equity Evid. 357 ; *Ormond* v. *Hutchinson*, 13 Ves. 53 ; *Rude* v. *Whitchurch*, 3 Simon, 562 ; *Nurse* v. *Bunn*, 5 Si

mon, 225 ; and that the Court would in this suit settle definitively the rights of the parties, *Lowe* v. *Richardson*, 3 Madd. 277 and Index, *p.* 564 ; *Pearson* v. *Cardon*, 4 Simon, 218.

Mills
*v.*
Gore.

WILDE J. delivered the opinion of the Court. This bill is founded on the Revised Stat. *c.* 81, § 8, and is brought to compel the defendants, or one of them, to re-deliver a certain deed and note of hand to the plaintiff, which he claims as his property, and which he avers have been taken from him, and secreted or withheld, so that the same cannot be replevied.

*March 19th*

It is admitted by Mr. Quincy, one of the respondents, that the deed and notes mentioned in the bill were deposited in his hands by Mills, one of the plaintiffs, and by Gore, one of the defendants ; that afterwards Gore, in the presence of Mills, requested Quincy to deliver the deed to him, Gore, and that Mills objecting, he informed them, that if they would agree what he should do, he would comply, but if not, he would keep the papers till the Supreme Judicial Court directed him, Quincy, what to do with them. He also admits, that afterwards, and before the filing of the plaintiff's bill, Mills demanded in writing of him the delivery of the deed and one of the notes, and that he did not comply with that demand.

These facts being admitted, we cannot entertain a doubt as to the question of jurisdiction. The demand of the papers and the refusal to deliver them, conclusively prove that they have been detained and withheld within the meaning of the statute. The plaintiffs were not bound to try an experiment, which might prove ineffectual, by suing out a writ of replevin and causing a new demand to be made by an officer ; as was decided in *Gibbens* v. *Peeler*, 8 Pick. 254, a case similar to this in most respects, though in one particular this case is much stronger for the plaintiffs. There it was proved that the defendant gave express notice to the plaintiff, that he should hold the notes then in question, subject to a suit of replevin. In this case no such notice was given. On the contrary, Mr. Quincy claimed to withhold the papers until he should be directed what to do by this Court.

Mills
v.
Gore.

The general question on the merits is, whether the plain tiffs have such a property in the deed and note signed and executed by the respondent Gore, as to entitle them to maintain this action.

The defendants maintain that these papers were never delivered ; and that if they were, they were obtained by the fraudulent misrepresentations of the plaintiff Mills, and the concealment of material facts, which he was bound to disclose.

The question of the delivery of the deed depends principally upon the disclosures contained in the answer of the respondent Gore. For although the facts stated by him are not inconsistent with the other evidence in the case, yet his answer, if admitted to be true, rebuts an important inference, which, without it, might perhaps be made from the facts stated by the witnesses on the part of the plaintiffs. It is objected that this answer is not evidence for the defendant Quincy. It is, however, admitted that no adjudged case has been found sustaining this objection ; and we are not aware of any rule of evidence, or principle of equity by which it can be supported. An answer of one defendant is not evidence against a co-defendant, for the plaintiff may so frame his bill and interrogatories, as to elicit evidence from one defendant to charge another, and to exclude such matters as might discharge him. To admit the answer of the one to be evidence against the other, under such circumstances, and when cross-interrogatories could not be admitted, would give to the plaintiff an undue advantage, against the manifest principles of impartial justice. But where the answer is unfavorable to the plaintiff, and consequently operates favorably for a co-defendant, this reason is not applica' le. Where the plaintiffs call upon a defendant for a discovery, requiring him to answer under oath fully to all the matters charged in the bill, they cannot be allowed to say that his answer is not testimony. And so was the decision in *Field v. Holland*, 6 Cranch, 8. In that case it was held that the answer of Cox, one of the defendants, was not evidence against the other defendant, Holland, but that being responsive to the bill it was evidence against the plaintiff. And besides, in the present case, the respondent Quincy has a right to de

fend himself under the title of Gore.  He is but a depositary of the papers, and became such at the request of both parties. He has no interest in the question, but is bound to deliver the papers to the party having the title.  The question of title is between the plaintiffs and the defendant Gore, and Gore's answer, being evidence for him in support of his title, is consequentially evidence for the other defendant.  So that in whatever point of view the objection may be considered, we think it quite clear that the answer in question, so far as it is responsive to the bill, is evidence to be weighed and considered ; and that it is to be taken to be true, unless it is contradicted by more than one witness, or by one witness supported by corroborating circumstances, according to the general rule of equity.  The answer in all respects, in relation to the question as to the delivery of the deed and note, is directly responsive to the allegations in the bill, and it expressly denies that the deed and note were ever delivered to the plaintiff Mills, as charged in the bill.

We are then to consider, (and this is the principal question,) whether the evidence on the part of the plaintiffs be sufficient to disprove the material facts as alleged in the answer.

Jonathan D. Wheeler, one of the attesting witnesses to the execution of the deed, testifies that he saw Gore sign the deed, and that he and Luke Harrington subscribed their names as witnesses ; that Gore, who was standing by the side of Mills at a desk, took up the deed after signing it, put it before Mills on the desk, and remarked, " there is no go back from that ; " that this was before Wheeler and Harrington had subscribed their names as witnesses ; that soon after subscribing his name, he (Wheeler) left the counting-room, leaving Mills and Gore writing, and the deed remaining on the desk before them.  Luke Harrington, the other subscribing witness, testifies substantially to the same facts.

The plaintiff's counsel rely on the testimony of these witnesses, and on the possession of the deed by the plaintiff Mills, as good and sufficient evidence of a delivery, and consequently as contradictory to the denial and answer of the defendant Gore in this particular   This evidence unexplained

would undoubtedly be sufficient proof of a delivery ; and so would the possession of the deed by Mills alone, if unaccounted for, be good *primâ facie* evidence of a delivery. But the question in this case is not, whether the plaintiffs have produced sufficient *primâ facie* or presumptive proof of a delivery, but whether the plaintiffs have proved the fact by direct testimony. There is no proof of a delivery of the deed into the hands of Mills ; but a deed may be delivered to a party by words without any act of delivery, as if the writing sealed lieth on the table, and the feoffor or obligor saith to the feoffee or obligee, go and take up the writing, it is sufficient for you, or it will serve the turn, or take it as my deed, or the like words, it is a sufficient delivery. Co. Lit. 36 ; Com. Dig. *Fait, A* 3 ; 4 Stark. Ev. 477. If however a party throws a writing on a table and says nothing, and the other party takes it up, this does not amount to a delivery, unless it be found to be put there with the intent to be delivered to the party, or to be taken up by him. Com. Dig. *Fait, A* 4 ; *Chamberlain and Staunton's case*, 1 Leon. 140.

Admitting these principles, which seem to be well established, we are of opinion that the evidence on the part of the plaintiffs is not sufficient to prove a delivery of the deed and note to them. The words used by Gore, when he placed the deed on the desk, do not indicate an intention to deliver the deed at that time ; they only manifest the intention of completing the contract of sale, but not of delivering the deed before he received H. D.'s note ; and there can be no reasonable presumption that he ever intended to deliver the deed before he received the note. That note was not delivered to him, but all the papers were taken by Mills, and carried to the office of Mr. Quincy, who it was agreed by the parties should take the acknowledgment of the deed. The conversation which was had between the parties in the presence of Mr. Quincy, as disclosed in his answer, cannot be reconciled with the supposition that the deed had been previously delivered to Mills, for he made no such claim, although Gore acted on the avowed understanding that there had been no delivery. And upon the whole, we are of opinion that there is nothing in the evidence to contradict the answer of Gore as

to the question of delivery, but, on the contrary, that all the circumstances of the case may be easily reconciled with his statement in that respect.

It has however been contended, that what took place at the office of Mr. Quincy amounted to a delivery ; but there is no ground for this argument. No such delivery of the deed is charged in the bill, but the charge is, that the deed was delivered before the parties went to Mr. Quincy's office ; and a deed cannot be twice delivered. And, besides, there is no evidence that the deed was delivered at Mr. Quincy's office. Gore offered to deliver the deed, it is true, but Mills declined accepting it in consequence of what he considered an offensive insinuation accompanying the offer on the part of Gore. And it is clear that an offer to deliver not accepted, cannot amount to a delivery.

In regard to the claim of partial relief, by restoring the parties to the situation they were in before the deed was deposited in the hands of Mr. Quincy, we are of opinion that the plaintiffs are not entitled to any such partial relief ; but that the Court is bound to decide the case definitively upon its merits, as disclosed by the evidence. The Court, in its discretion, might have allowed the question as to the delivery, or as to the alleged fraud, to be tried by a jury, on the application of either party, but in that case they would have ordered the answers to be admitted as evidence. But if the deed should be restored to the possession of the plaintiffs, leaving the parties to litigate these questions at law, the defendant's answers would be excluded, which would be manifestly against justice and the equity of the case as it now appears upon the evidence. The rule in chancery is, that where the defendant in express terms negatives the allegations in the bill, and there is no sufficient evidence to control the negative averments in the answer, the Court will neither make a decree in favor of the plaintiff, nor send the case to be tried at law ; but will simply dismiss the bill. 2 Story on Eq. 744.

A party will not be allowed first to litigate a question in a court of equity, and, after failing to establish his claim, again to litigate it in a court of law ; and if the question could be again litigated at law, the party applying to a court of equity

<div style="text-align:center">Mills<br>*v.*<br>Gore.</div>

ought not to be placed in a better situation than he was in before making the application. In the present case the plaintiffs have failed to support the material allegations on which their prayer for relief is founded. They have proved no delivery of the deed and note claimed as their property, and the Court cannot order these papers to be restored to them for any purpose whatever, without doing injustice to the other party, as the case appears upon the whole evidence

It was thereupon decreed that the injunction against Quincy be dissolved, that the bill be dismissed, with costs, and that the note of H. D. be delivered by Quincy to the plaintiffs.