EDWIN A. BOWEN ET AL.

v.

BENJAMIN FRIDLEY ET AL.

APPLICATION OF PAYMENTS.—Where neither debtor nor creditor makes specific application of payments to any particular items of indebtedness, the law will appropriate the payment in the way most advantageous to the creditor. Thus if there are two debts, one secured and the other unsecured, application will be made to the latter; or where one security is more precarious than the other, the law will apply the payment to the one the security for which is most precarious.

APPEAL from the Superior Court of Cook county; the Hon. JOHN A. JAMESON, Judge, presiding. Opinion filed June 14, 1881.

Mr. FRANK J. CRAWFORD for appellants; that no change in the form of the indebtedness, or in the mode or time of payment, will discharge the mortgage, cited Flower v. Elwood, 66 Ill. 438; Wayman v. Cochrane, 35 Ill. 152; Hamilton v. Quimby, 46 Ill. 90; Hugunin v. Starkweather, 5 Gilm. 422; Elliott v. Blair, 47 Ill. 342; Darst v. Bates, 95 Ill. 493.

The renewal of the note or giving a new note will not change the security: Cullum v. Branch Bank, 23 Ala. 797; Jones on Mortgages, § 927; Bolles v. Chancery, 8 Conn. 389.

If payment be made by check or bill which is not paid, although indorsed as payment on the mortgage note, no part of the mortgage lien is satisfied: Jones on Mortgages, § 934; Md. and N. Y. C. & I. Co. v. Wingert, 8 Gill. 170; Burrows v. Bangs, 34 Mich. 304.

A purchaser without notice of an equity will be protected: Hunter v. Stoneburner, 92 Ill. 75; Moore v. Hunter, 1 Gilm. 317.

The law will presume payments were credited on the unsecured debt, where no direction was given as to their application: Hare v. Stegall, 60 Ill. 380.

The creditor's right to make application may be exercised at any time: 1 Am. Lead. Cas. 345; Arnold v. Johnson, 1 Scam.

196; McFarland v. Lewis, 2 Scam. 345; Bayley v. Wyncoop, 5 Gilm. 449; Heintz v. Cahn, 29 Ill. 308; Lowery v. Gear, 32 Ill. 382; Sprague v. Hazenwinkle, 53 Ill. 419; Bonnell v. Wilder, 67 Ill. 327; Wilhelm v. Schmidt, 84 Ill. 138; Davis Sewing M. Co. v. Buckles, 89 Ill. 243; Chester v. Wheelwright, 15 Conn. 562; Johnson's Appeal, 37 Pa. St. 268; Jones on Mortgages, § 384.

Mr. R. G. MONTONY, for Appellees.

BAILEY, J. A former decree in this cause in favor of the complainants was before this court on appeal at the October term, 1879, and reversed, for reasons stated in the opinion then filed. Fridley v. Bowen, 5 Bradwell, 191. The cause being again heard in the court below on pleadings and proofs, a decree was entered dismissing the bill at the complainants' costs for want of equity, and from this decree the complainants have appealed to this court and assigned errors.

On the hearing, the counsel for the complainants admitted in open court that they only sought to obtain a decree for the amount due on the note for $4,711.77, claiming that note to be a renewal of the $4,000 note which formed a part of the original $17,000 indebtedness from Edmund D. Taylor to the First National Bank of Mendota, for which the mortgage sought to be foreclosed was given as collateral, the balance of said indebtedness having been satisfactorily adjusted, and the complainants making no claim now in respect thereto. The question to be decided on this appeal, then, is whether the complainants are entitled to a decree of foreclosure for the amount due on the $4,711.77 note.

The determination of this question depends, 1, upon whether, as a matter of fact, this note is a continuation or renewal of the indebtedness formerly represented by the $4,000 note; and 2, whether, under the terms upon which the mortgage was given by Taylor to the bank, it can be held for the payment of the $4,000 note, after $13,000 of the original $17,000 which it was given to secure, has been paid.

In the former record it appeared that the $4,000 note was surrendered by the bank to Taylor and canceled, and that other

notes were given by Taylor to the bank from time to time, the last of said notes being the note for $4,711.77, but we failed to find in that record satisfactory evidence that these several notes were given in continuation or renewal of the same indebtedness formerly represented by the $4,000 note, and accordingly held that the surrender of the $4,000 note and the taking of new notes was, *prima facie*, a payment of the former note, but that such *prima facie* presumption was liable to be rebutted by proof, the burden of making such proof being on the complainants.

On the last hearing this proof we think was supplied. Evidence was introduced by the complainants from which it satisfactorily appears that the indebtedness formerly secured by the $4,000 note was not intended to be paid, and was not in fact paid, but that after being renewed a number of times by the surrender of the old note and the substitution of a new one, it finally assumed the form of the $4,711.77 note—the $711.77 being the unpaid interest on the original debt. It only remains to be determined whether this indebtedness is still secured by the mortgage.

In the opinion delivered on a former appeal, the conclusion was reached that, as the record then stood, it appeared presumptively, that the entire $17,000 had been paid, thus completely discharging the premises from the lien of the mortgage. This conclusion was necessarily decisive of the whole case. A further view, however, was advanced to the effect, that the $10,000 note and mortgage were in fact given to secure $10,000 of the $17,000, or ten-seventeenths of Taylor's indebtedness to the bank, and that when that proportion of the indebtedness was paid, the mortgage was satisfied. The soundness of this view is now called in question, and as it seems clear that its statement was unnecessary to the decision of the case, we do not regard ourselves bound by it as *res adjudicata*, and if on further consideration we reach the conclusion that it is untenable, it will be our duty to so decide.

It appears that at the time the note and mortgage were given, Taylor was owing the bank various sums of money, evidenced by sundry notes and drafts, amounting in the aggre-

gate to $17,000. A few days before the date of the mortgage, he applied to the bank for a further loan of $8,440, which the bank refused, unless he would first reduce or in some way secure his existing indebtedness. Having shortly before that time obtained from Fridley a conveyance of the premises in question, he exhibited to the officers of the bank his deed and an abstract of title, and it was finally arranged that if he would improve his personal credit by giving a mortgage on the property for $10,000 of the $17,000, the bank would comply with his request for a further loan. He accordingly executed the note and mortgage for $10,000 as a security for that amount of the previous indebtedness, and thereupon the bank made him a further loan of $8,440. No portion of the $17,000 was specifically set apart or designated as the part to be secured by the mortgage, but the mortgage was deposited with the bank under this agreement, viz., that it should secure $10,000 of the $17,000 indebtedness.

There is no evidence that Taylor, at or before the time of making any of his payments, made any specific appropriation of such payments to the satisfaction of the mortgage nor does it appear that the bank performed any act, at least up to the time it commenced proceedings to foreclose the mortgage, evidencing an election on its part to consider the items of indebtedness first paid as belonging to that part of the indebtedness not secured by the mortgage. The question then is, whether the law will, under these circumstances, apply the payment first to the satisfaction of the mortgage.

The general rule in relation to the appropriation of payments undoubtedly is, that where a debtor is owing a creditor several debts, and makes payments, he has a right to direct their application to any one or more of the debts as he may choose; but if he makes payments and omits to give directions as to their application, the creditor may then apply them as he sees fit. Where, however, an appropriation is made by neither party, the law will direct as to how it shall be made. The authorities are not altogether uniform as to the principles upon which the law will proceed in making this appropriation, as some of the reported cases hold that it should be made in

Bowen v. Fridley.

the way most beneficial to the debtor.  But the rule which seems to be supported by the overwhelming weight of authority, as well as by the strongest considerations of equity and justice, is that it should be made in the way most advantageous to the creditor.  Thus where one of the debts is secured and the other unsecured, or where one security is more precarious than the other, the law will apply the payment to the debt which is unsecured, or to the one the security for which is most precarious.

A leading case on this subject is Field v. Holland, 6 Cranch, 8, where Chief Justice Marshall, delivering the opinion of the court, says: " The principle that a debtor may control, at will, the application of his payments, is not controverted.  Neither is it denied that on his omitting to make this application the power devolves on the creditor.  If this power is exercised by neither, it becomes the duty of the court, and in its performance a sound discretion is to be exercised.  It is contended by the plaintiffs that if the payments have been applied by neither the creditor nor the debtor, they ought to be applied in the manner most advantageous to the debtor, because it must be presumed that such was his intention.  The correctness of this conclusion cannot be conceded where a debtor fails to avail himself of the power which he possesses, in consequence of which that power devolves on the creditor.  It does not appear unreasonable to suppose that he is content with the manner in which the creditor will exercise it.  If neither party avails himself of his power, in consequence of which it devolves on the court, it would seem reasonable that an equitable application should be made.  It being equitable that the whole debt should be paid, it cannot be inequitable to extinguish first those debts for which the security is most precarious."  See, also, this case as reported in 1 Am. Lead. Cas. 5th ed. 345, and notes.

The same rule is laid down by our Supreme Court in Hare v. Stegall, 60 Ill. 380.  In that case the debtor owed the creditor two debts, one secured and one unsecured, and a payment having been made which so far as appeared had been applied by neither the debtor or creditor, it was held that it should be

applied to the debt for which the creditor held no security.   In
the opinion the court say:   "If no appropriation is made by
the parties, the law would apply it to the debt not secured, on
the ground that in the absence of any direction the presump-
tion would be that the creditor, having a right to choose to
which it should be applied, would appropriate it in the mode
most advantageous to him."

It is true the facts in the preceding cases differ somewhat
from those presented here.   There the parties had designated
the particular items of indebtedness to which the securities
should apply.   Here the mortgage covers an indefinite $10,000
of various items of indebtedness, amounting in the aggregate
to $17,000, but the particular items which were to be regarded
as secured was left undetermined.   It further appears that in
this case the payments were not general payments upon the
entire indebtedness, but payments of the specific items of
which it was composed, without any reference, however, by
either debtor or creditor, to whether the items paid belonged
to the $10,000 secured or to the $7,000 unsecured, and without
any specific application of the payments to the mortgage or to
the unsecured portion of the indebtedness.

But notwithstanding these differences, we think the present
case is sufficiently analogous to those above cited to warrant an
application of the same principles.   There can be no doubt that
Taylor might have appropriated the various payments as he
made them to the extinguishment of the mortgage, and we see
no reason why, upon his failure so to do, the bank might not
have applied them upon the unsecured portion of the indebted-
ness.   As neither party has exercised the power of appropria-
tion, the court must exercise it upon equitable principles.   It
is clearly equitable that the entire indebtedness should be paid,
and that result can be most certainly reached by applying the
payments, first, to that portion of the indebtedness not covered
by the mortgage.

The case of Chester v. Wheelright, 15 Conn. 562, is in point,
and, we think, sustains the view we have taken.   In that case,
Wheelright, being indebted to Chester & Co. in the sum of
$10,426.14, on an account current for notes lent, cash advanced,

and goods furnished, executed to them a mortgage on certain real estate for $3,000, and delivered it to them to secure that amount of the indebtedness, the security of the mortgage being limited to no particular part of the account. Subsequently various payments were made on the indebtedness by Wheelright, and various other collaterals which he had deposited with Chester & Co. as security for said indebtedness were collected and applied thereon, making the entire amount of credits considerably larger than the amount of the mortgage, but leaving more than $3,000 still unpaid. No specific application of these payments was made by either party. In a suit to foreclose the mortgage, it was contended by the defendants that the payments should be applied, first, to the portion of the indebtedness thus secured, so as to satisfy the mortgage in full, and by the plaintiff, that they should be applied to the portion not secured, thus entitling him to a decree for the full amount of the mortgage. It was held that as neither party had made a specific application of the payments, the law would apply them according to the justice of the case, which, under the circumstances, required their application to the unsecured portion of the account, thus giving the plaintiff a decree for the full amount of the mortgage.

We are of the opinion, then, that the complainants are entitled to a decree for the amount of the indebtedness originally secured by the $4,000 note, and now represented by the note for $4,711.77; and the decree will accordingly be reversed and the cause remanded, with instructions to the court below to enter a decree in favor of the complainants for that sum and costs.

Decree reversed.

Wilson, J., dissents.