### Alvin Wood and Herbert W. Newlove v. John Callaghan, David Pennock, and Homer Pennock.

*Promissory notes—Indorsers—Liability of, how fixed—Upon the facts in this case (see head-note 1), manner of sending notice of protest held to be according to commercial usage—And that notice need only be given to immediate indorser by indorsee making demand of payment—Notary not required to take any notice of the fact that residence of maker is on note—Or to make any inquiry as to residence of any indorser except the last—Due diligence held to have been used—Mailing box under carrier system, a part of the mail delivery system—Depositing letter in is a mailing at post-office—Secured and unsecured notes—Holder, in absence of any agreement or direction as to application of payment, may apply on unsecured note.*

1. Plaintiffs, residents of Louisville, Kentucky, sued defendant Callaghan as *second* indorser on a note executed to him by defendant David

Pennock, and indorsed by Homer Pennock, *all* residents of Detroit, Michigan, and transferred to plaintiffs by Callaghan in part payment for goods. Prior to maturity the note was indorsed to the Farmers' & Drovers' Bank of Louisville by plaintiffs, and by the indorsee to the Detroit National Bank, which caused a demand for payment to be duly made at the bank where the note was payable, in Detroit; and on refusal the notary made the usual certificate of protest, and four notices of the same, one directed to the Farmers' & Drovers' Bank at Louisville and one to *each* of the remaining parties interested, but without stating their *place* of residence. He inclosed *all* of the notices in one envelope, directed to the Louisville bank, and deposited the same in the Detroit post-office the same day, being Saturday, but after the departure of the last mail for Louisville. Plaintiffs knew where defendant Callaghan resided, of which fact the notary was ignorant, but he made no inquiry, or examination of the city directory on which such residence appeared, to ascertain such fact. The notices were received by the Louisville bank on the morning of the *third* day after being so mailed, and all except the one to *it* directed it mailed the same day to plaintiffs, who, on the *same* day, mailed the one addressed to defendant Callaghan to him, at Detroit, across the face of which was written in pencil, "sent to us through mistake," which notice was received by him on the *second* day thereafter. No notice or letter accompanied it, but on the envelope was printed the firm name and address of plaintiffs, with the usual direction for return if not delivered.

*Held*, that the manner of sending the notices was according to commercial usage, and that the Detroit National Bank was only required to give notice of protest to its immediate indorser, the Louisville bank.

*Held*, further, that in such a case it is not necessary for the notary to take any notice of the residence of the maker being upon the note, or to make any inquiry as to the residence of any of the indorsers except the last; and that a contrary rule would greatly embarrass and obstruct business, and is not required by the authorities.

*Held*, further, that due diligence was exercised by all of the parties after the transmission of the notices from Detroit, and if any delay occurred it was in the post-office department, and not in the Louisville bank or plaintiffs.

*Held*, further, that the pencil indorsement across the face of the notice sent defendant had no effect upon his liability, and that, instead of being a notice to him that plaintiffs did not look to him for payment, it evidenced a contrary desire on their part.

2. A letter deposited in a street mailing box forming a part of the mail delivery system in a city is a delivery or mailing at the post-office therein.

3. Defendant Callaghan sold a stock of goods to David Pennock, the purchase price being paid by the vendee's six promissory notes, secured

by chattel mortgage on the goods. Callaghan indorsed three of the notes to plaintiffs, two without recourse and one in blank, and received payment on those he retained. Pennock sold the goods to one Chase, who knew of the mortgage, who sold to one Gross, who gave his note as part of the purchase price, with Callaghan as joint maker, and afterwards sold the stock to Callaghan's wife. Callaghan made a small payment on the Gross note, and it was then transferred to plaintiffs and paid to them by Callaghan, they then being the owners of the three notes first mentioned. No directions were given by Callaghan or his co-payor, or by the mortgagor, as to the application of this payment, nor was there any agreement made with Callaghan by the plaintiffs, at the time they took the three notes or subsequently, as to the application of the proceeds of the mortgage security, which mortgage does not appear to have been formally assigned to plaintiffs.

*Held*, that plaintiffs stood in the well-known relation of creditors having a secured and unsecured debt at time of such payment, and under the facts stated had a right to apply it upon the first unindorsed note, no equities existing in favor of Callaghan entitling him to a *pro rata* application of the money.

Error to Superior Court of Detroit. (Chipman, J.) Argued May 6, 1886.   Decided May 12, 1886.

Assumpsit. Defendant Callaghan brings error. Affirmed. The facts are stated in the opinion and summarized in the head-notes.

*Conely, Maybury & Lucking*, for appellant:

On the dishonor of a promissory note it is the duty of the holder to give notice thereof to all of the prior parties liable to make payment to him, and to whom he means to look for payment, and if he gives notice to one of the prior parties, and not to the others, the latter are in law discharged, although the former may be held to payment: Story on Prom. Notes, § 299.

If the notice of the Detroit National Bank was sufficient to charge Callaghan as to *it*, then such notice would inure to the benefit of every other party on the note standing between the bank and Callaghan: Id. § 302; but if insufficient, as we claim, Callaghan never became legally chargeable to said bank, hence no suit can be maintained against him on account of his indorsement.

This is not the case of a holder giving notice in due season to his immediate indorser, followed by notice by him to

his next prior indorser, and so on in regular order. Where this is done, the holder may avail himself of such several notices and sue any one of the prior parties: Story on Prom. Notes, § 302.

Callaghan resided in Detroit, *where* the note was made payable, and when he indorsed it certain legal conditions attached to his contract, the performance of which must precede any liability on his part, some of which are found in the statute (How. Stat. § 1586), which was intended to provide for a method of service more liberal than prevailed at common law. Prior to this statute, where the sender of such notice and the indorser to be charged resided in the same place, the service must be personal, or at his place of business or domicile: *Newberry v. Trowbridge*, 4 Mich. 391; *Nevius v. Bank of Lansingburgh*, 10 Id. 547; *Newberry v. Trowbridge*, 13 Id. 263–7. The same rule is laid down in Wade on Notice, § 785; Bayley on Bills, 276–7; *Bowling v. Harrison*, 6 How. 248.

The Michigan decision last cited was announced at the April term, 1865, and the statute cited was passed at the first session of the Legislature thereafter: Laws of 1867, p. 190.

It is no answer to say that Callaghan ultimately received the notice, which amounts to the required personal service: *Nevius v. Bank of Lansingburgh*, 10 Mich. 547 (see cases cited in brief on same page); Story on Prom. Notes, § 320; nor is it any answer to say that the Detroit National Bank did not know that Callaghan lived in Detroit; he had not changed his residence from the time the note was given. His name and address were in the city directory. He was the payee in the note, and the stipulation for payment at the People's Savings Bank, Detroit, was as much for his benefit as any one's. The notary made no inquiry to ascertain his residence, and if ignorant of that fact he was bound to exercise some diligence in informing himself: Story on Prom. Notes, § 335 (note 1).

In general, the holder should immediately apply to all prior parties to a note ·for the necessary information, and should make inquiries, and send notice to the place where it may reasonably be supposed the party resides: Id.; *Peirce v. Pendar*, 5 Metc. 352–5. In this case the payor resided in Detroit, as stated on the note, which was payable at a bank in that city, and the bank giving notice of protest might have assumed that to be Callaghan's residence and mailed the notice to him in the Detroit post-office, as the statute required: How. Stat. § 1586; Story on Prom. Notes, § 335 (note 1).

If prior parties refuse to give information as to residence of indorser, such refusal may excuse want of notice: Story on Prom. Notes, § 335 (note 1); but it is only where, by the exercise of diligence, the residence cannot be ascertained, that want of notice is excused: Id.; and the holder must exhaust every means of information: Wade on Notice, § 915. Proper service not being shown, and no diligence used to find Callaghan, there can be no recovery.

By operation of law the chattel mortgage remained a *pro rata* security for all *four* notes, and priority of maturity gave no right to priority of payment: *Cooper v. Ulmann*, Walker's Chan. 251; *English v. Carney*, 25 Mich. 178; *McCurdy v. Clark*, 27 Id. 445.

*James T. Keena* (*John Atkinson* and *Isaac Marston*, of counsel), for plaintiffs:

The notice of protest was sufficient in point of time. Sending such notice by the post of the day after the dishonor of the note, or receipt of notice of such dishonor, is sufficient to charge an indorser, and if two mails go out on the same day it is sufficient to deposit the notice in the post-office in time for either, fractions of a day not being counted: Daniel on Neg. Inst. § 1053; Parsons on Bills, 517; *Etting v. Schuylkill Bank*, 2 Penn. St. 355; *Whitwell v. Johnson*, 17 Mass. 449; *Howard v. Ives*, 1 Hill, 263.

The manner of sending the notice was according to commercial usage. The Detroit National Bank was only required to give notice to its immediate indorser, and for the purposes of demand and protest it may be treated as the real owner, although holding the paper for collection: *Bank v. Perkins*, 18 Me. 292; Story on Notes, 426; Daniel on Neg. Inst. § 991; and the Louisville bank had the same time for giving notice to the plaintiffs after notice from its agent as if it had been an indorser receiving notice from a holder: *Church v. Barlow*, 9 Pick. 547.

The mode adopted by the Detroit National Bank was the usual one, to which the indorsers must be considered as assenting, or the negotiation of commercial paper payable at a distance from the holder's residence would be greatly embarrassed, if not obstructed: Story on Bills and Notes, §§ 326, 331, 419–26; Wait's Actions and Defenses, 647, and cases cited: *Bank v. Buttrick*, 11 Gray, 387; *Warren v. Gilman*, 17 Me. 360; *Lawson v. Bank*, 1 Ohio St. 206; *Howard v. Ives*, 1 Hill, 263; *Farmers' Bank v. Vail*, 21 N. Y. 485;

*Bank v. Hathaway*, 5 Metc. 212; *Mead v. Engs*, 5 Cowen, 303.

Depositing the notice in the letter-box constituted a delivery to the post-office at Louisville: Abbott's Trial Ev. 433; *Bank v. DeGroot*, 7 Hun, 210; *Pearce v. Langfit*, 101 Penn. St. 507.

MORSE, J. This cause was tried in the superior court of the city of Detroit, without a jury, and judgment rendered for the plaintiffs.

The facts, as found by Judge Chipman, so far as it is necessary to consider them to determine the questions raised in this Court, are substantially as follows:

The plaintiffs reside in Louisville, Kentucky, and are co-partners under the name of Alvin Wood & Co.

The defendant Callaghan resides in the city of Detroit, and has resided there since the sixteenth day of June, 1884, at least. On that day he sold a stock of groceries, and fixtures and furniture, in his store in Detroit to the defendant David Pennock, and received in part payment thereof six promissory notes, in all amounting to $2,800.

The first four of said notes were each for $466.67, and the last two of them for $466.66, each. They were dated on the first days of July, August, September, October, November, and December, respectively, and each made payable in one month after date, payable to the order of Callaghan at the People's Savings Bank, in Detroit. Each was signed by David Pennock, and indorsed by Homer Pennock at the time Callaghan received them.

The payment of these notes was secured by a chattel mortgage, dated June 16, 1884, executed by David Pennock to Callaghan, and covering the stock of goods sold by him to Pennock, which mortgage stated the location of said goods to be at No. 266 Howard street, Detroit. The notes dated July 1st and August 1st were paid to Callaghan at maturity.

The defendant Callaghan bought goods of plaintiffs, and in part payment therefor gave them the three notes dated October 1st, November 1st, and December 1st. The note dated September 1st he retained, and it was paid to him when due.

Of the notes sent by him to plaintiffs, the two dated October 1st and November 1st he indorsed without recourse; and the one dated December 1st he indorsed in blank, which is the note sued for and declared upon in this case.

The chattel mortgage, upon its execution, was filed in the office of the city clerk in Detroit, where it remained. It does not appear that it was ever assigned to plaintiffs.

October 31, 1884, David Pennock gave a bill of sale of the goods covered by the mortgage to Marcus A. Chase, who knew of the mortgage. November 7, 1884, Chase sold the goods for $500 to one Gross. Gross paid $60 in money, and gave his note, with Callaghan as joint signer, for the balance. Gross ran the business a short time, and then sold the stock to the wife of Callaghan. January 23, 1885, Callaghan paid Chase upon the Gross note $16.50, which Chase indorsed and then transferred the balance of the note to plaintiffs, indorsing it without recourse.

January 24, 1885, Callaghan paid the balance of this Gross note to them, the amount being $423.50. At this time the three notes of which David Pennock was maker and Callaghan indorser in the hands of the plaintiffs were unpaid, and were the only notes not paid. They then amounted, respectively, principal and interest, to the following sums: $474.20, $471.47, and $468.75. No other payment has been made upon any of them.

Prior to the maturity of the note sued upon it was indorsed by the plaintiffs to the Farmers' & Drovers' Bank of Louisville, Kentucky, and by that bank to the Detroit National Bank.

On the third day of January, 1885, William T. De Graff presented the note to the People's Savings Bank for payment, and made his certificate of protest. He filled out four notices of protest, directed, respectively, to the Farmers' & Drovers' Bank aforesaid, to the plaintiffs, John Callaghan, and Homer Pennock. The address of the first was Louisville, Kentucky. The others were without any place or address. These notices were sent under cover of one envelope, directed properly to the Farmers' & Drovers' Bank.

This envelope was deposited in the Detroit post-office on the evening of Saturday, January 3, 1885, between 8 and 9 o'clock, after the last mail for that day for Louisville had left the post-office. It went by the next mail, Sunday eve, which, if on time, would have reached Louisville Monday at 1 o'clock P. M.

There was then a regular carrier delivery in Louisville, one about 7.30 in the morning, another between 10 and 11 o'clock A. M., a third between 1 and 2 o'clock P. M., and a fourth between 3 and 4 in the afternoon. This letter, arriving at 1 P. M., would not be delivered until between 3 and 4 P. M.

The Louisville bank closes its doors at 3 o'clock, so that no delivery could be made to said bank by carrier after 3 o'clock in the afternoon. The notices were delivered to the said bank on the morning of the 6th. Said bank that day mailed all said notices, except the one directed to itself, to Alvin Wood & Co., who received them on the same day about 11 o'clock in the morning; and that plaintiffs, about 3 o'clock in the afternoon of that day, deposited in a "letter-box," erected and maintained by the United States post-office or mail department, at the said city of Louisville, and postage prepaid, an envelope directed as follows: "John Callaghan, Esq., Detroit, Mich., cor. 8th and Howard;" and that letters and all mail matter deposited in said box were regularly taken therefrom at least three times a day by carriers in the employ of said post-office department. Said envelope so directed to said defendant reached said post-office at said city of Louisville at 11 o'clock in the morning of Wednesday, January 7, 1885. On said envelope there were printed the words: "If not called for in ten days, return to Alvin Wood & Co., Distillers, Pure Kentucky Whiskies, S. E. cor. First and Main Sts., Louisville, Ky."

In said envelope was the notice heretofore mentioned as having been directed to John Callaghan, and it is the same notice sent by De Graff to the Farmers' & Drovers' Bank, Louisville, Kentucky, under cover. No notice or letter, or other writing, was sent to said Callaghan, but across the face

of the notice sent there were written in pencil the words ⸱
"Sent to us through mistake." Said envelope so directed
to said John Callaghan was received at the Detroit post-
office on the eighth day of January, A. D. 1885, at ten⸱
o'clock in the morning, the regular and usual time for the
mails to go from Louisville to Detroit. Said envelope so·
directed to said John Callaghan, and inclosing said notice,
was delivered to said Callaghan in the afternoon of January
8, 1885, by the carrier. At the time of its receipt by Calla-
ghan it had across it the words heretofore mentioned,—
"Sent to us through mistake."

At the time of the taking of said note by said Alvin Wood⸱
& Co. they knew, and ever since have known, that said Cal-
laghan resided at the corner of Eighth and Howard streets,
in said city of Detroit ; that when the notary demanded pay-
ment, and mailed the notices, he did not know where Calla-
ghan's residence was, nor did he make any inquiry, or look
into the city directory for the same ; Callaghan's name and
address were in the directory.

Upon these facts the circuit judge concluded, as matter
of law, that the plaintiffs were entitled to recover, and ren-
dered judgment accordingly for the full amount of the note
and interest.

The defendant brings error, and insists that he did not
receive due notice of the dishonor of the note, and was there-
by discharged from his liability as indorser.

He claims that the notary should have made inquiry for
the residence of Callaghan, or looked in the directory, either
of which would have given him information that he lived on
the corner of Eighth and Howard streets, in Detroit; that,
the maker and indorser both· living in Detroit, the notice
could not be transmitted to the Louisville bank without
inquiry ; and that, granting it could be so sent, it was the
duty of plaintiffs to have mailed it to Callaghan by the first
mail, which they did not do ; that the notice should have
been delivered by them at the general post-office, and not
deposited in a street letter-box, which caused a delay of a
day ; and that the pencil writing upon the back of said notice,

"Sent to us through mistake," was in fact a notice to Callaghan that plaintiffs did not intend to hold him upon the note.

The manner of sending the notices was according to commercial usage, and the Detroit National Bank was only required to give notice to its immediate indorser, the Louisville bank. We do not deem it necessary for the notary, in a case like the present, to take any notice of the residence of the maker being upon the note, or to make any inquiry as to the residence of any of the indorsers except the last. Such a rule would greatly embarrass and obstruct business, and is not required by the authorities: Story, Bills, §§ 326, 331–419, 426; Bayley, Bills (2d Amer. ed.) 275; *Bank v. Buttrick*, 11 Gray, 387; *Bank v. Hathaway*, 5 Metc. 212; *Lawson v. Bank*, 1 Ohio St. 206; *Warren v. Gilman*, 17 Me. 360.

After the transmission of the notices from Detroit, due diligence was exercised by all parties. The Louisville bank delivered the notices to the plaintiffs on the same day they received them, January 6th, and plaintiffs mailed the notice to defendant the same day. The delay was in the post-office department, and not in the Louisville bank or the plaintiffs. The street boxes and street delivery are a legal part of the post-office system, and a letter deposited in one of these must be considered as being delivered at the post-office: Abb. Trial Ev. 433, 434; *Bank v. De Groot*, 7 Hun, 210; *Pearce v. Langfit*, 101 Penn. St. 507.

There were no laches on the part of plaintiffs, nor can the fact that they indorsed the notice as they did have any effect upon defendant's liability. The sending of the notice to him was not necessary if, as defendant claims, the plaintiffs wished to release him. Instead of its being a notice to him that they did not look to him for a payment of the note, as argued by defendant's counsel, we think it evidenced a desire on their part to hold him, which they are attempting to do in this suit.

The counsel for defendant also claim that the chattel mortgage was a security equally for all the notes, and that the proceeds of it could not be all indorsed upon one note,

but should at least have been applied *pro rata* upon the three then in plaintiffs' hands. He also argues that the defendant indorsing two of the notes without recourse, and this one in blank, it was intended by him that the chattel mortgage should stand as security for the note upon which he might be held.

At the time the money was realized from the chattel mortgage, and paid to plaintiffs, they owned all the unpaid notes to which the mortgage was collateral, and, in the absence of any agreement with Callaghan, at the time they took the notes or subsequently, could apply the proceeds of the security as they saw fit upon one or all of these notes. There was no agreement between them and Callaghan about it; and his signing the notes as he did left the plaintiffs, outside of the mortgage, with two notes with only the Pennocks liable upon them, and this note in suit with the additional security of Callaghan's name. They then stood, when they received the money derived from the mortgage security, in the well-known relation of a creditor having a secured and an unsecured debt. The chattel-mortgage payment was the payment of the maker who gave it, and no direction being given as to the application of the payment by the debtor, or by Callaghan, who sent it, the plaintiffs had an undoubted right to apply it upon the unsecured first note, which they did.

Callaghan has no equity which entitles him to a *pro rata* application of the money. He had recovered his pay in full upon the notes retained by him; and when he indorsed this note in blank there is nothing to show that he did so in reference to this mortgage, or in dependence upon its contributing to pay it. The only reasonable inference to be drawn from the notes being taken by plaintiffs as they were, to my mind, is that they and Callaghan both supposed that the chattel-mortgage security would not liquidate more than the first two of them, and in view of that fact the indorsement of Callaghan was required and given upon the last. In fact it did not pay the whole of the first note. Brandt, Sur. § 286 ; *Mathews v. Switzler*, 46 Mo. 301–303.

It must be remembered, also, that Callaghan was not pay-

ing Pennock's debt to the plaintiffs, but a debt of his own, for which he had turned out the paper of Pennock in payment.

We find no error in the proceedings, and the judgment is affirmed, with costs.

The other Justices concurred.