Speak, J.
An action was commenced. January 23, 1904, by the Advance Thresher Company against Dell S. Hogan, "W. B. Hogan, and J. Lincoln Clayton, in the common pleas of Logan, to obtain judgment against the Hogans upon ten promissory notes of various dates and amounts, maturing at different times, and aggregating nineteen hundred and sixty-two dollars, and to obtain foreclosure of a chattel mortgage executed by the Hogans August 29, 1903, and given to secure payment of the notes, the property covered being a grain separator, a compound steam traction engine, a band cutter and feeder, pneumatic straw stacker, and other items of personal property including some live stock. The traction engine, with attachments, was sold by the Company to the Hogans contemporaneous with the execution of the mortgage and the delivery of three ef the'notes, each for four hundred dollars, two of which were signed also by the defendant in error, 'Clayton. Each of these notes contained a statement to the effect that it, with others, was secured by chattel mortgage of even date, and that failure to pay the note or the others so secured when due made that note and all others so secured immediately due at the option of the holder. The mortgage had a similar provision to the effect that in case of default in payment of any of the notes at maturity then all of the notes may become due and payable without notice at the option of the mortgagee. Two of the notes being past due at the commencement of the action the mortgagee, by declaration in the petition, elected to treat all as due.
Tho Hogans were in default. Clayton answered alleging that he was surety only on the two notes, and that January 23, 1904, the Hogans made and *311 -delivered to Mm their chattel mortgage conveying the property described in the petition subject to the plaintiff’s prior mortgage lien. He demanded as relief a finding of his suretyship on the two notes, and that plaintiff be required to exhaust the Hogans and its securities other than this defendant' and apply a pro rata of the proceeds on the two notes on which he was surety before resorting to its remedies at law against him as surety.
Both chattel mortgages were duly attested and filed with the proper officer.
Such further proceedings were then had that judgment was rendered against the Hogans on the petition of plaintiff and an order of sale issued and the property embraced in the mortgage was sold, the proceeds of the sale amounting to twelve hundred, forty-eight and seventy-five hundredths dollars.
The cause was then tried in the common pleas as to the distribution of proceeds, and was appealed to the circuit court, in which court plaintiff filed a reply to Clayton’s answer in which it was alleged (1) that in addition to the chattel mortgage given by the Hogans to Clayton, they on the same date executed and delivered to him a mortgage on real estate owned by them as further indemnity, and (2) that at the time of the execution of the chattel mortgage set out in the petition it was agreed between plaintiff and the defendants that none of the sureties on the note secured by the mortgage should have any rights under the mortgage unless the same should be by the plaintiff assigned to them, and that on sale of the property covered the proceeds should be first applied on the notes secured thereby other than those on which Clayton was *312 surety until such notes not so secured were fully paid.
The circuit court, on trial, sustained a demurrer to the first paragraph of the reply, and overruled a demurrer to the second paragraph. As part of its evidence, and in support of the second paragraph of the reply, the plaintiff introduced its chattel mortgage which contains the following stipulation: “And the proceeds of sale shall be applied, after paying all costs, fees and expenses incurred by the mortgagee, its agents or assigns in that behalf, to the payment of any or all of said notes; and if not sufficient to pay all of said notes, then to be applied on either of said notes or divide the proceeds among the several notes in such proportions as it may elect at the option of the party of the second part without notice, whether said notes are due or not due by the terms thereof, the whole being made due by the consent of the party of the first part hereby given on his violating any of the conditions or covenants of this chattel mortgage; all notes being declared due as above provided, any deficiency arising after applying the proceeds of said sale as above specified the mortgagors agree to pay forthwith to said mortgagee, its successors or assigns. Where any of the notes mentioned in this chattel mortgage are endorsed or guaranteed by any third party, it is agreed and understood that said endorsers or guarantors, shall have no rights under this chattel mortgage, unless same is assigned to them, and that on sale of the property as herein provided the proceeds shall be applied on notes not so guaranteed or endorsed until the same are fully paid.”
It appeared further by' the uncontradicted testimony that the steam traction engine with attach *313 ments was purchased by Dell S. Hogan of the plaintiff after the purchase of the other articles mentioned;' the price was $1,200, for which he offered his three notes for $400 each with W. R. Hogan, and a chattel mortgage on the engine and the articles enumerated in mortgage then on file; that the Company refused the offer because not satisfied with the security, and then, and before the proposition to sell was accepted, the name of the defendant Clayton was obtained by Hogan to two of the notes. The security being thus made satisfactory to the Company, the sale was made and the engine delivered.
The court thereupon found for the defendant Clayton as to his alleged suretyship, and in his favor and against plaintiff as to the distribution of the fund, and ordered that the fund, after payment of costs, be applied pro rata upon all the notes set out in the petition.
The defendant offered no testimony. No separate finding of facts was made, but there is no substantial dispute as to the evidence, which is all set out in the bill of exceptions.
Hpon this state of facts what are the rights of the parties?
'It will be noticed that we are not called upon to consider any right or contention of the Hogans for they are in default here as well as in the courts below. The simple question presented by the record is whether or not the surety Clayton has any standing to insist upon a pro rata distribution of the proceeds of the sale of the mortgaged property. We are of the opinion that he has not and will undertake to state briefly some grounds for that conclusion. Clayton must be held to have understood fully *314 the provisions of the notes to which his name is appended either by his own hand or with his unquestioned authority. One provision is that the notes, with others, are secured by chattel mortgage and that failure to pay any when due makes all immediately due at the option of the holder. Whiie not a party to the mortgage itself the defendant Clayton must be held to have received notice of its contents among which are the provisions hereinbefore recited which give the mortgagee the option to make application of the proceeds of sale of the mortgaged property among the several notes as it might elect, and that where any note is endorsed or guaranteed by any third person such person shall have no right under the mortgage unless the same is assigned to him, and upon sale of the property the proceeds shall be first applied on notes not so guaranteed or ■endorsed until the same are fully paid. True, Clayton is not in the strictest sense either a guarantor or an endorser, but who can doubt that this language is used here, and intended to be so understood, in the broad sense as describing anyone who might assume the attitude of a surety? So that upon the very terms of this mortgage of which Clayton had in law notice, not only by the terms of the notes which he signed but by the terms of the mortgage from the Hogans which he accepted, he is precluded from any protection by virtue of his ■suretyship.
But another consideration leads to the same conclusion, and would seem to leave no doubt as to the rule which should prevail. Clayton asks to participate in the proceeds of the sale of the mortgaged property; that is, he seeks the aid of the Thresher ■Company’s mortgage for his own protection. The *315 property was sold on foreclosure of that mortgage, and it is as to the distribution of the proceeds that the present contention arises. How can Clayton ask to have the benefit of that mortgage without being subjected to all of its provisions, as well those which hurt as those which help ? Surely he cannot. He must take cum onere if he takes at all. We are not dealing with a case where no provision has been made in the instrument for application of proceeds, but with one where the stipulations in that respect are clear, comprehensive, and admit of no possible doubt with respect to the purpose and understanding of the parties. This situation eliminates from discussion the large number of authorities cited in which no such provision is to be found. Ours is just such a case as Scott, J., had in mind in Bushfield v. Meyer, 10 Ohio St., 337, where, after citing Bank v. Covert, 13 Ohio Rep., 240, he says that “the fund arising from the sale of the mortgaged premises being insufficient to discharge all the notes must be distributed among them pro rata, unless the terms of the assignment or the circumstances under which it was made, show a different intention of the parties.” The case at bar is running over with evidences of “a different intention.” Our case differs essentially from the case of Bushfield v. Meyer in this: there the insufficiency of the security seemed not to have been anticipated by the parties for they failed to provide for it; the parties in the case at bar had not only anticipated such insufficiency but had made distinct provision for that contingency.
It is urged that there is neither justice nor equity •in applying the fund to these notes not given for the debt created in the purchase of the engine, whose sale produced the fund, to the exclusion in part, or *316 in whole, of the debt created by the purchase. The idea intended to be advanced is that in equity the proceeds of the sale of the engine should be applied exclusively on the notes given for it. Even if this were equitable it would be impracticable. The engine was sold in a group with the separator, the band cutter and feeder, and the straw stacker, all bringing $1,000. There is no means of separating* the parts. But it would not be equitable. Clayton’s undertaking was accepted as a security for the debt in addition to that afforded by the mortgage, without which the sale of the engine would not have been made, and there is no principle of equity upon which Clayton can claim the benefit of the mortgage security to the detriment of the creditor. This conclusion is in accord with the holding of Taft, J., in Kortlander v. Elston, 52 Fed. Rep., 180, that: “The primary equity growing out of the relation of creditor, debtor and surety is that the creditor be paid what is due him; and he does not lose this equity as against the surety, except by misconduct to the latter’s prejudice. When the creditor in the original contract has received collateral covering the entire debt, and a personal guaranty on part of it, the legal and the natural presumption, in the absence of circumstances showing the contrary, is that he has taken the personal guaranty as additional or cumulative protection for his debt. In order that his debt may be paid, therefore, he has the right to exhaust all his securities, and in doing so he may apply the collaterals to that part of the debt not covered by the personal guaranty, and hold the guarantor to the full measure of his contract. The equity which a surety or a guarantor has in the collateral is merely the right, accruing only after *317 the principal debt is fully paid, to he subrogated to the right of the creditor in respect of the collateral security.” See, also, Nichols v. Knowles, 3 McCray, 477; Wood v. Callaghan, 61 Mich., 402; Hanson v. Manley, 72 Ia., 48. But it seems unnecessary to go out of our own state for authorities. Gaston v. Barney, 11 Ohio St., 506, covers this phase of the ease as with a blanket.
Again it is insisted that the option respecting the appropriation of payments came too late, and that it could not he exercised after the bringing of the suit, the notes all being then due' by the election ■of the holder. Such has been the view of some courts. But we do not understand that there is any iron-clad rule on the subject. So long as the delay, if there he such, works no prejudice to the other party, we see no reason for holding that the •delay in and of itself ought to deprive the plaintiff of a right clearly guaranteed by its contract. No word or phrase in the petition is calculated to mislead Clayton, hut the claim is distinctly made that whatever right Clayton had is subordinate to that of the plaintiff. It would seem equitable, and in consonance with well-established principles, that where a fund is to he distributed, a demand of priority is not too late if made any time before trial. Indeed, in analogy to the rule as to demands in lieu of homestead, it would seem that it may he made any time before the actual order of distribution. In this case it was distinctly made in the reply, thus taking issue with the claim of a pro rata distribution set up in the answer, and, we think, was in abundant time. It was in no sense “misconduct to the surety’s prejudice.” Gaston v. Barney, supra; Philpot v. Jones, 2 Ad. & El., 41.
*318 The claim that this being an enforced payment, the result of foreclosure proceedings, the plaintiff is deprived of its right of election as to the application of payments, finds no warrant in any reported Ohio case, and is not supported by principle. The plaintiff was entitled, upon condition broken, to immediate possession of the property, and the-refusal by the Hogans to surrender it cannot impair any right secured to plaintiff by the contract. Gaston v. Barney, supra.
We are of opinion that the fund, after payment of costs, should be applied on the notes other than those on which Clayton is surety. The judgment of the circuit court will be reversed and the cause remanded with direction to render judgment in conformity with this opinion.

Reversed.

Shauck, C. J., Price, Crew and Davis, JJ., concur.