GUSTIN *v.* EVENING PRESS CO.

1. LIBEL AND SLANDER—DEMURRER—PLEADING.
   In actions for libel, a demurrer admits the publication and also the allegations of its falsity and malice.

2. SAME—EVIDENCE—NEWSPAPERS.
   To test its libelous quality, a publication is to be considered as a whole, including the character of the display of its headlines when the article is published in a newspaper, and the language employed therein.

8. SAME—WORDS ACTIONABLE PER SE.
   Upon demurrer to plaintiff's declaration, the court correctly held that it was actionable *per se* to publish concerning an attorney and business man engaged in lumbering operations

and other transactions requiring him to borrow money, that he had turned over his assets to a friend and gone to Australia, the article appearing under black faced headlines as follows, ''Goes to Australia. Alpena Man Turns Over Assets and Seeks New Country;" plaintiff's declaration charging that the article was false and imputed to him flight, financial embarrassment, and an intention to abandon his domicile, profession, and property.

4. SAME.
  The publication of such article in a newspaper tended to work injury to plaintiff's good name, credit, and business: no special averments of damage were required.

5. SAME—INNUENDO—PLEADING.
  When words are libelous *per se* no innuendo is needed; but if the declaration contains an innuendo not borne out by the publication, the allegations relative thereto may be treated as surplusage, and plaintiff may recover on the article itself.

Certiorari to Kent; Perkins, J. Submitted April 5, 1912. (Docket No. 50.) Decided October 7, 1912.

Case by Henry K. Gustin against the Evening Press Company for libel. An order overruling a demurrer to plaintiff's declaration is reviewed by defendant on writ of certiorari. Affirmed.

*James H. Campbell,* for appellant.

*Hunt & Altland,* for appellee.

McALVAY, J. This case is before the court for consideration upon a writ of certiorari to the circuit court for Kent county, as provided by Act No. 310 of the Public Acts of 1905, to review the action of said court in overruling defendant's demurrer to the first count in plaintiff's declaration.

Plaintiff instituted in that court an action against defendant to recover damages for an alleged libel. The defendant is a Michigan corporation, publishing a newspaper in the city of Grand Rapids. The declaration filed in the case contained two counts, covering two publica-

tions of two articles relative to plaintiff, claimed to be libelous. A demurrer was interposed as to the first count, and defendant entered a plea to the second count. The first count is upon the following article, published in the Evening Press, the newspaper of defendant company, on December 8, 1909, as follows:

## "GOES TO AUSTRALIA.

### "Alpena Man Turns Over Assets and Seeks New Country.

(Special to the Evening Press.)

" Alpena, Dec. 8.—Harry K. Gustin has gone to Australia to rest for three or four months. He has a brother there who is American Consul at New Castle in New South Wales, says J. A. Widner, of the Alpena Cedar Company, a friend and business associate of Gustin. He fell in debt to the amount of $40,000 or $50,000. He has turned his affairs over to Widner, who says that his assets are more than $200,000.

" Last season Gustin operated thirty lumber camps, all within 100 miles of each other on the Detroit & Mackinaw. Slow returns pressed him hard, as he was at great expense in the support of the camps. Michael O'Brien, leading real estate man, says Gustin is the biggest taxpayer on lands in this section of the State. Business men generally agree that he has not defrauded any one."

Plaintiff, in the inducement to this count, avers at length that he was an attorney at law, engaged in practice at Alpena, and engaged in the business of the purchase and sale of lands and timber, and in the manufacture of lumber and timber products, and financially and personally interested in a large number of business concerns and enterprises; that he had held public office, and was prominently engaged in business and public affairs and was a borrower of money from banks and other sources in the conduct of or promotion of various business enterprises, and that some of the business concerns and partnerships in which he was interested were also borrowers. Further details of this inducement need not be given. The dec-

laration, by the innuendoes, avers that defendant meant and intended to charge and cause persons who might read the article to understand, believe, and be informed that plaintiff had abandoned his domicile at Alpena; that plaintiff had relinquished the practice of his profession in Michigan; that plaintiff had irrevocably assigned and transferred the control and management and disposition of his business, assets, and property to a party or parties other than himself; that plaintiff had decamped, absconded, and fled from his home and his country, and without intention of returning again; that plaintiff was financially embarrassed at and before the time of his flight; that the flight of plaintiff was disgraceful and dishonorable, and indicative of a suspicion that plaintiff was guilty of past misconduct.

In the demurrer of defendant it is averred that the publication set out in the declaration was not libelous; that it did not support the innuendoes of the declaration; that it did not tend to injure the plaintiff in any of the respects alleged, either in his good name, credit, reputation, integrity, business, or otherwise.

In actions for libel, the demurrer admits the publication, and also the allegation of its falsity and malice. 25 Cyc. p. 469, and cases cited; *Belknap* v. *Ball*, 83 Mich. 583 (47 N. W. 674, 11 L. R. A. 72, 21 Am. St. Rep. 622).

To test its libelous quality, a publication must be considered as a whole, which would include, if, as in this case, it is published in a newspaper, the character of the display of the headlines, as well as the words used in them. 25 Cyc. p. 357, and cases cited. *O'Connor* v. *Sill*, 60 Mich. 175 (27 N. W. 13, 28 N. W. 162).

In the instant case the declaration charges that these headlines were printed in large, black-faced type in the daily edition of defendant's newspaper.

"The title or heading of an article is a part thereof, and must be considered in determining whether or not the publication is libelous; and it has been frequently held,

in actions based on publications in newspapers, that the sting of the libel was contained in the headlines." 18 Am. & Eng. Enc. Law (2d. Ed.), p. 985, and cases cited.

No more apt illustration of this doctrine could be found than in the instant case, where the display headlines contain the sting of the libel, fixing with certainty the character of the publication as libelous *per se*.

As we construe the count in the declaration demurred to, it was intended to charge that the publication was libelous *per se*, and therefore did not require any averment of special damages.

An eminent authority says:

"In determining whether the words charged are libelous *per se*, they are to be taken in their plain and natural import, according to the ideas they are calculated to convey to those to whom they are addressed; reference being had not only to the words themselves, but also to the circumstances under which they were used. They should receive a fair and reasonable construction, and will be presumed to have been used in the ordinary import attached to them in the community in which they are uttered or published." 1 Cooley on Torts, pp. 409, 410, and cases cited.

See, also, 25 Cyc. p. 355.

Applying this rule of construction to the article under consideration, our conclusion is that it is libelous *per se*, and warrants the construction placed upon it by the plaintiff in the allegations of his declaration demurred to. There is no ambiguity in the meaning of the words used by defendant. This publication clearly tended to injure plaintiff in his good name, credit, and business.

It is urged that the innuendoes are not supported by the declaration. It is well settled that when the publication complained of is libelous *per se* no innuendo is necessary; and if the innuendo alleged is not borne out by the words it may be treated as surplusage and a recovery had on the words themselves. 1 Cooley on Torts, p. 416, and cases cited; 25 Cyc. p. 449, and cases cited. Our conclusion is

that the trial court was not in error in overruling the demurrer in this case.

The judgment is affirmed. Defendant will be allowed the time provided by rule in which to plead.

MOORE, C. J., and STEERE, BROOKE, STONE, and OSTRANDER, JJ., concurred.