SLAUGHTER et al. v. TEXAS LIFE INS. CO. (No. 6124.)

(Court of Civil Appeals of Texas. Austin. Feb. 18, 1920.)

**1. PLEDGES ⟐⟳59—PLEDGEE MAY APPLY PROCEEDS OF COLLATERAL BETWEEN SEVERAL DEBTS SECURED.**

Where the holder of a note has collateral to secure its payment, for the purpose of collection and application to the debt the collateral is the property of the holder of the note, and if he holds it as security for payment of more than one debt, he may, in the absence of contrary agreement, apply such proceeds as he may deem proper on the several debts.

**2. PLEDGES ⟐⟳59—PROCEEDS OF COLLATERAL MAY BE APPLIED TO MOST PRECARIOUS DEBT.**

In the absence of contrary agreement, where collateral is held as security for several debts, the creditor at his option may apply the proceeds of the collateral to the debt which he deems most precarious.

**3. PLEDGES ⟐⟳59—ASSIGNEE OF COLLATERAL UNLESS FORBIDDEN BY ORIGINAL CONTRACT MAY APPLY PROCEEDS AS HE PLEASES AMONG DIFFERENT DEBTS.**

If it is desired to require a creditor to apply the proceeds of collateral to different debts due him in a certain order, the obligation must be created in the original contract; otherwise the creditor may elect in relation to application of the proceeds.

**4. PLEDGES ⟐⟳19—COLLATERAL MAY BE EXTENDED BY AGREEMENT TO OTHER DEBTS AFTER TRANSFER.**

Where collateral has been transferred to secure a debt which remains unpaid, it may by agreement of the parties thereto be made to apply also to other debts.

**5. PLEDGES ⟐⟳59—TESTIMONY OF AGREEMENT AS TO APPLICATION OF AMOUNT COLLECTED ON COLLATERAL NOT PLEADED INADMISSIBLE.**

In a life insurance company's action on assigned lien notes secured by its policies, also, on a policy loan note, where defendant did not plead any agreement between him and plaintiff company that the amount collected on a policy should be applied first to payment of the balance due on a particular vendor's lien note, defendant's oral testimony to such effect was inadmissible.

**6. EVIDENCE ⟐⟳441(11) — PAROL EVIDENCE INADMISSIBLE AS VARYING WRITTEN CONTRACT.**

In a life insurance company's action on assigned lien notes secured by its policies, also on a policy loan note, defendant's oral testimony, that at the time of execution of the last note it was agreed between him and plaintiff company that the amount collected on a policy should be first applied to payment of a balance due on a prior vendor's lien note, *held* inadmissible as varying the written contract between the parties and contradicting its legal effect.

⟐⟳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Appeal from District Court, McLennan County; H. M. Richey, Judge.

Action by the Texas Life Insurance Company against A. L. Slaughter and others. From judgment for plaintiff, defendants appeal. Affirmed.

See, also, 211 S. W. 350.

Spell, Boggess, Naman & Penland and Sanford & Harris, all of Waco, for appellants.

Gallagher & McCullough, of Waco, for appellee.

Findings of Fact.

JENKINS, J. On July 15, 1902, the Texas Savings Loan Association conveyed to A. L. Slaughter a lot in Waco, Tex., for the consideration of his vendor's lien note for $860. On the same date Slaughter obtained a life insurance policy from the appellee for $900, denominated, "Gold Bond Life Insurance Policy, No. 160," which provided for the payment of semiannual premiums of $51.05 for 100 months, and executed to the Texas Savings Loan Association a deed of trust, which recited that said $860 purchase-money note was further secured by said policy, assigned to the said association, expressly providing therein that the taking of such additional security should in no way impair the vendor's lien. The note above referred to was due in 100 months, with interest at the rate of 10 per cent. per annum, payable monthly. Said note, together with its collateral security, was assigned to the appellee herein. Appellants soon after purchasing said lot established their homestead thereon. On January 17, 1903, Slaughter paid $500 on said note, leaving a balance of $360 unpaid.

On June 27, 1905, A. L. Slaughter bought a lot in Waco from Charlotte Hoehn, for the consideration of $10 cash, and his vendor's lien note for $600, due in 30 days, with interest at the rate of 10 per cent. per annum. On June 28, 1905, Charlotte Hoehn transferred this note to appellee. This note was due in 30 days after date. A. L. Slaughter executed an extension of his note, due in 100 months, and at the same time executed the following:

"This note is further secured by a $900.00 policy of insurance in said company, No. 160, dated July 1, 1902 on the life of A. L. Slaughter, this day assigned by us to it as collateral security, and attached hereto. This additional security shall in no way impair said lien."

On October 25, 1905, Slaughter and wife conveyed a portion of the Hoehn lot to Mrs. Maggie Rodgers, taking her vendor's lien notes therefor in the sum of $1,100, which notes were on that date assigned to appellee. On October 27, 1905, Slaughter executed a new note for $1,260, which represented the $360 balance due on the first note mentioned, the $600 on the second note, and $300 cash

loaned on that date. This note contained the following provisions:

"Having deposited with the holder of this note, as collateral security, securities or notes mentioned on the reverse side of this note to secure this note and any other indebtedness which I may now or hereafter owe to the holder either as principal or indorser, it is agreed and understood that a failure to pay this note, or any other indebtedness when due, shall at the option of the holder mature all of said indebtedness to said holder. In the event of failure to pay at maturity, the maker hereby specially agrees that the holder is then vested with full authority, without notice of any action, to sell at public or private sale, at any time or place, to buy, transfer, or hypothecate all or any part of said securities, or cause the same to be done by any person, and apply the proceeds to the payment of this note, together with all costs incurred, and the residue, if any to be turned over to me."

On the reverse side of this note appears the following:

"1. One insurance policy for $900.00 on my life in the Texas Life Insurance Company of Waco, Texas, dated February 1, 1902.

"2. One insurance policy on my life in said company, dated October 1, 1905, for $600.00.

"3. The sum of $600.00 of within note is given in extension of my vendor's lien note hereto attached, and made a part hereof, dated January 27, 1905, and payable to the order of Mrs. C. Hoehn.

"4. The sum of $360.00 is an extension of the balance of that amount due on my $860.00 vendor's lien note to Texas Savings Association of Waco, hereto attached, and made a part hereof.

"5. Also collateral secured by 69 vendor's lien notes amounting to $1,100.00, dated October 25, 1905, and hereto attached, made by M. L. Rodgers, all three of said sets of notes being secured by vendor's lien on Lee Slaughter block on Bell's Hill in Waco. The sum of $300.00 of said note is advanced this date as a loan on said security.

"[Signed] A. L. Slaughter."

The insurance policy for $600, above referred to was forfeited for nonpayment of premiums.

On December 5, 1905, Slaughter borrowed from appellee $200, and executed his note therefor, due in one year after date, with interest at the rate of 10 per cent. per annum. This note contained the collateral security clause in identical language with such clause in the $1,260 note, and the indorsement on the back was as follows: "My Gold Bond Life Policy Nos. 244 and 160, and also the Mrs. Rodgers' notes."

Appellee realized out of the part of the Hoehn place sold to Rodgers the sum of $143.40, and out of the Rodgers' notes the sum of $70.96, which sums were credited on appellant's indebtedness to appellee. The Gold Bond having matured, appellee collected the same, which amounted at the time of such collection to $939.04. Appellee's tabulated statement as to credits is as follows:

| | |
|---|---:|
| Dec. 8, 1905. Amount of last loan............ $ | 200 00 |
| Interest Nov. 26, 1906...................... | 19 50 |
| | $ 219 50 |
| Nov. 26, 1906. Credit Rodgers collection.... | 70 96 |
| Balance due ............................... $ | 148 54 |
| Int. on bal. Nov. 26, 1906, to Nov. 1, 1910.. | 58 42 |
| | $ 206 96 |
| Nov. 1, 1910. Gold Bond matured............ $ | 939 04 |
| Less above note and interest................ | 206 96 |
| Leaves for credit........:............... $ | 732 08 |
| Cash loan of $300, of date Oct. 25, 1905, and interest, $150.50, or total.................. | 450 50 |
| Leaves for credit.................... $ | 281 58 |
| Oct. 25, 1905. Debt Hoehn place............. $ | 600 00 |
| Int. to Nov. 1, 1910......................... | 301 00 |
| Nov. 1, 1910. Total debt Hoehn place........ $ | 901 00 |
| Deduct credit as above...................... | 281 58 |
| Nov. 1, 1910. Bal. debt Hoehn place........ $ | 619 42 |
| Int. to Aug. 6, 1912...................... | 86 41 |
| Total Aug. 6, 1912......................... $ | 705 83 |
| Aug. 6, 1912. Credit proceeds sale of Rodgers place................... $ | 143 40 |
| Aug. 6, 1912. Bal. due on note.............. $ | 562 43 |
| Aug. 6, 1912. Balance $600.00 note............ $ | 562 43 |
| Interest to Sept. 18, 1918.................... | 355 86 |
| | $ 918 29 |
| Attorney's fees............................. | 91 82 |
| | $1,010 11 |
| Amount of renewal of $360.00 note embraced in note of Oct. 25, 1905....................... $ | 360 00 |
| Int. thereon for 12 yrs. 10 mos. 24 days...... | 464 50 |
| | $ 824 50 |
| Int. on $300 accumulated int. from Oct. 25, 1905, to maturity, Feb. 25, 1914, at rate of 6% per annum from maturity, Feb. 25, 1914, to Sept. 25, 1918, 4 yrs. 6⅚ months.... | 82 25 |
| | $ 906 75 |
| Attorney's fees .........................:............ | 90 67 |
| | $ 997 42 |
| | 1,010 11 |
| Total amount'............................... | $2,007 53 |
| Amount of Int. paid by mistake Dec. 8, 1905, being $8.20 plus $10.50, equals $18.70, with interest thereon at 10% from Dec. 8, 1905, to September 18, 1918...................... | 42 32 |
| | $1,965 21 |
| Which amount is apportioned between the two items as follows: $360.00 debt secured by homestead should be deducted $12.09 with 10% attorney's fees thereon, $1.20, aggregating $13.29, leaving balance due on said item .................................. $ | 984 13 |
| From $1,010.11 debt secured by lien on the unsold portion of the Hoehn purchase should be deducted $30.00 with 10% attorney's fees thereon, $3.02, aggregating $33.25, leaving balance due on said lien......... | 976 86 |
| | $1,960 99 |

Judgment was rendered for appellee against A. L. Slaughter for $1,960.99. From this part of the judgment there is no appeal. The judgment foreclosed the vendor's lien on the Hoehn place, for the balance due on the $600 note. No complaint is made of this. The judgment also foreclosed the vendor's

lien on the land purchased from the Savings Loan Association, for the balance due on the $860 note above referred to. From this portion of the judgment Slaughter and wife have appealed. The land last referred to was and is the homestead of Slaughter and wife.

## Opinion.

We will first state the general principles of law applicable to the facts of this case, and then make the application.

[1] (a) Where the holder of a note has collateral to secure the payment of the same, such collateral for the purpose of collecting the same and applying it to the debt is the property of the holder of the note; and, if he holds it as security for the payment of more than one debt, he may, in the absence of agreement to the contrary, apply such proceeds as he may deem proper to the payment of the several debts. Bank of Newburgh v. Bigler, 83 N. Y. 64, 65; Wood v. Callaghan, 61 Mich. 402, 28 N. W. 165, 1 Am. St. Rep. 597; Griggs v. Day, 136 N. Y. 152, 32 N. E. 612, 18 L. R. A. 120, 32 Am. St. Rep. 714; Morrison v. Bank, 65 N. H. 253, 20 Atl. 301, 302, 9 L. R. A. 282, 23 Am. St. Rep. 39.

[2] (b) Courts have frequently stated that in the absence of agreement to the contrary, where collateral was held as security for several debts, the creditor might, at his option apply the proceeds of the collateral to the debt which he deemed the most precarious. Upon this point we quote from Bank v. Ginty, 108 Cal. 153, 41 Pac. 40:

"The pledge stood, therefore, as security for both notes, and the case falls within the doctrine invoked by plaintiff that where a creditor holds two notes or obligations one better secured than the other, and has collateral security' for both alike, he has the right, in the absence of any modifying agreement, to have the collateral applied upon the obligation which is most precarious by reason of being least secured. Murdock v. Clarke, 88 Cal. 384, 26· Pac. 601; Field v. Holland, 6 Cranch, 8 [3 L. Ed. 136]; Wood v. Callaghan, 61 Mich. 412, 28 N. W. 162 [1 Am. St. Rep. 597]; Morrison v. Bank, 65 N. H. 253, 20 Atl. 300 [9 L. R. A. 282, 23 Am. St. Rep. 39]."

This, however, adds nothing to the force of the proposition, hereinbefore stated, that the creditor, in the absence of agreement to the contrary, may apply the proceeds of the collateral to whichever of several debts secured by it he may see proper.

[3] (c) If it is desired to require a creditor to apply the proceeds of collateral to different debts due him in certain order, this obligation must be created in the original contract; otherwise the creditor, by the assignment of the collateral, will have acquired the legal right to elect as to the order in which he will apply the proceeds of collateral to the payment of debts due him. The debtor cannot thereafter change such contract without the consent of the creditor. Upon this point we quote from 31 Cyc. as follows:

"The debtor, upon giving collateral security, has the right to direct the application of the proceeds or to authorize their application as the creditor may elect. But, if at the time of the delivery of the collateral the debtor fails to exercise his right to direct the application of its proceeds he cannot do so afterwards, and the creditor may, at his election, apply the proceeds to the payment of any of the secured debts that are due at the time the money is received." 31 Cyc. 865.

[4] (d) Where collateral has been transferred to secure a debt which remains unpaid, it may, by agreement of parties thereafter be made to apply also to other debts.

Such being the law, the judgment foreclosing the vendor's lien on appellant's homestead tract is correct, unless the vendor's lien note thereon has been fully paid. It has been paid if appellant had the right to have the proceeds of the collateral first applied to the payment of the balance due on this note, at the time the money was collected on the bond held as collateral; otherwise it has not. Appellant not having included in his contract, as to collateral, the right to have the proceeds of the Gold Bond first applied to the $860 note, and the appellee having elected to apply it to the other debts, no part of the $360 balance due on appellee's $860 note has been paid.

[5, 6] Appellant assigns error on the refusal of the court to permit him to prove by oral testimony that, at the time of the execution of said $1,260 note, it was agreed between appellant and appellee that the amount collected on the Gold Bond should be first applied to the payment of the balance due on the $860 vendor's lien note.

The court did not err in excluding this testimony, first, for the reason that no such agreement was pleaded by appellant; and, second, because such testimony would have varied the written contract, and contradicted its legal effect. Hardie & Co. v. Wright, 83 Tex. 345, 18 S. W. 615; Railway Co. v. Harrison, 97 Tex. 617, 80 S. W. 1139; Faires v. Cockrell, 88 Tex. 428, 31 S. W. 190, 639, 28 L. R. A. 528; Kramer v. Wolfe, 99 Tex. 599, 600, 91 S. W. 775.

It is not clear from appellee's petition whether this suit was brought on the $1,260 note, in which the three component parts were merged, or upon the separate debts represented in said note. This, however, we think is immaterial. If upon the separate debts, then the application of the proceeds of the Rodgers' notes, the Hoehn tract, and the Gold Bond policy was properly made, as shown in the statement of facts, leaving a balance of $824.50 on the original $860 vendor's lien note. If, however, the $1,260 note be considered as a merger of the separate items entered therein, then, after the application of the money received, there would have been left the sum of $1,960.99 due on this note. The appellee would not have been entitled to have foreclosed his vendor's lien on

appellant's homestead for the full amount of this debt, but only for so much thereof as was represented by the unpaid balance on the $860 note. This is what the judgment did.

Finding no error of record, the judgment of the trial court herein is affirmed.

Affirmed.